# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **In re**<br><br>**Alexander E. Jones,**<br><br>**Debtor.** | **Bankruptcy Case No. 22-33553 (CML)**<br><br>**Chapter 11** |
| **Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Estate of Marcel Fontaine,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Alexander E. Jones and Free Speech Systems, LLC,**<br><br>**Defendants.** | **Adv. Pro. No.: 23-03035 (CML)** |

## STATEMENT OF UNCONTESTED MATERIAL FACTS
## IN SUPPORT OF PLAINTIFFS HESLIN, LEWIS, POZNER,
## AND DE LA ROSA'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Neil Heslin, Scarlett Lewis, Leonard Pozner, and Veronique De La Rosa (together, the "**Movants**"), through their undersigned counsel, respectfully submit this Statement of Uncontested Material Facts as to which there is no genuine issue to be tried in support of their Motion for Summary Judgment (the "**Motion**")[1] against Defendant Alexander E. Jones.

### STATEMENT OF UNCONTESTED MATERIAL FACTS

1. As described more fully in the Complaint, Movants' children were murdered on December 14, 2012 in their classrooms at Sandy Hook Elementary School. *Heslin v. Jones (In re Alexander E. Jones)*, Adv. Proc. No. 23-03035 (CML), Complaint to Determine Dischargeability of Debt (Bankr. S.D. Tex. March 10, 2023) (the "**Complaint**"); *see also* Declaration of Stuart R. Lombardi, filed concurrently herewith (the "**Lombardi Decl.**"), Ex. 4 (Pozner/De La Rosa Amended Petition); Lombardi Decl., Ex. 8 (Heslin/Lewis Amended Petition). After Jones repeatedly told his millions of followers that Movants were lying, their children were actors, and the shooting was a hoax, Movants sued him in Texas state court and won. The following summarizes the facts as found and established by the state court[2] when it rendered judgments against Jones in those actions.

**A. Immediately after their children were murdered at Sandy Hook, and continuing over the next decade, Jones claimed the shooting was a hoax and that Movants were liars.**

2. Starting from the day of the Sandy Hook massacre, Jones claimed that the Sandy Hook school shooting was a hoax. The state-court records establish that Jones lied about the shooting on at least the following occasions:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

[2] Judge Maya Guerra Gamble of the 459th District Court of Travis County, Texas presided over both the Pozner/De La Rosa and the Heslin/Lewis Actions.

Case 23-03035   Document 28   Filed in TXSB on 05/12/23   Page 3 of 20

3. On the afternoon of the shooting, Jones broadcast "Connecticut School Massacre Looks Like False Flag Says Witnesses." *See* Lombardi Decl., Ex. 9 (Heslin/Lewis Pl. Video Ex. 1). In the next month, Jones alleged that Ms. De La Rosa faked an interview with Anderson Cooper, and cited this lie as a key piece of evidence in his claim that Sandy Hook was staged as part of a criminal plot. Lombardi Decl., Ex. 10 (Pozner Affidavit) ¶ 7. On December 17, Jones broadcast a segment titled "Creepy Illuminati Message in Batman Movie Hints at Sandy Hook School." Lombardi Decl., Ex. 11 (July 27, 2022 Heslin/Lewis Trial Tr. ) 6:11-18. On December 19th, Jones broadcast "Sandy Hook Second Shooter Cover-Up." *Id.* at 6:19-23. On December 21, in an episode titled "Lower Part of Gotham Renamed 'Sandy Hook' in Dark Knight Film," Jones again claimed that the latest Batman movie revealed that the shooting was a hoax. *Id*. at 6:24-7:3.

4. As time passed, the lies continued. On January 10, 2013, Jones broadcast "Professor Claims Sandy Hook Massacre MSM Misinformation." *Id*. at 7:4-8. Five days later, Jones (through FSS/InfoWars) ran "Sandy Hook AR-15 Hoax? Still No School Surveillance Footage." *Id*. at 7:9-13.

5. In a January 27, 2013 episode titled "Why People Think Sandy Hook is a Hoax," Jones told his audience, "[i]n the last month and a half, I have not come out and said this was a clearly staged event. Unfortunately, evidence is beginning to come out that points more and more in that direction." Lombardi Decl., Ex. 12 (Heslin/Lewis Pl. Video Ex. 5). The "evidence" cited by Jones was his own claim that Plaintiff Veronique De La Rosa's interview with Anderson Cooper was faked on a blue-screen. That was false, but it became a central pillar of Jones's Sandy Hook conspiracy theory.

6. The state-court records established that Mr. Pozner, an occasional listener of Jones's show, heard the broadcast and emailed Jones to set the record straight.

> Alex,
> I am very disappointed to see how many people are directing more anger at families that lost their children in Newtown. Accusing us of being actors . . . . Haven't we had our share of pain and suffering? All these accusations of government involvement, false flag terror, new world order etc. I used to enjoy listening to your shows prior to 12-14-12. Now I feel that your type of show created these hateful people and they need to be reeled in!

Lombardi Decl., Ex. 13 (Heslin/Lewis Pl. Ex. 48) (ellipsis in original). InfoWars' Chief Editor Paul Watson replied by assuring Mr. Pozner that Jones and InfoWars knew Sandy Hook was "a very real tragedy with very real victims" and that they had "not promoted the 'actors' thing." *Id.*

7. But on air, Jones told a much different story. On March 27, 2013, he aired an episode titled "Sandy Hook was a Total False Flag!" Lombardi Decl., Ex. 11 (July 27, 2022 Heslin/Lewis Trial Tr.) 8:18-9:3. Days later, another episode followed: "Crisis Actors Used at Sandy Hook! Special Report." *Id.* at 10:6-9.

8. 2014 brought more lies. On March 14, 2014, in an episode titled "Sandy Hook, False Narratives vs. The Reality," Jones claimed that the United Way was part of the plot, and told his audience, "undoubtedly, there's a cover-up, there's actors, they're manipulating, they've been caught lying, and they were pre-planning before it and rolled out with it." *See* Lombardi Decl., Ex. 14 (Heslin/Lewis Pl. Video Ex. 8). On May 9, 2014, "Revealed: Sandy Hook Truth Exposed" aired. Lombardi Decl., Ex. 11 (July 27, 2022 Heslin/Lewis Trial Tr.) 23:7-11. On May 13, 2014, "Sandy Hook Massacre was a DHS Illusion Says School Safety Expert." *Id.* at 24:21-25:3. Jones continued to publish articles throughout 2014 alleging the shooting was staged. *See generally id.* at 23:7-43:9 (detailing at least seven separate InfoWars broadcasts or articles lying about the Sandy Hook shooting from May to December 2014). On September 25, 2014, in an episode titled "Sandy Hook Deaths Missing from FBI Report," Jones did mock imitations of crying parents and stated, "there are photos of kids who are still alive they said died." Lombardi Decl., Ex. 15 (Heslin/Lewis

Pl. Video Ex. 10). That same day, the Debtors published their third most popular story ever, "FBI Says Nobody Killed at Sandy Hook." Lombardi Decl., Ex. 11 (July 27, 2022 Heslin/Lewis Trial Tr.) 31:1-33:15.

9. In early December 2014, after Jones continued broadcasting his lies, Mr. Pozner began making complaints to YouTube. On December 9, 2014, YouTube removed an InfoWars video. Lombardi Decl., Ex. 16 (Heslin/Lewis Pl. Ex. 56). InfoWars published an article that day naming Mr. Pozner and his business, comparing the removal of the video "to actions taken in the *1984* world envisioned by George Orwell" and commenting that "[t]his guy's company would come in handy to any Sandy Hook hoax perpetrators. . . ." *Id.*

10. Jones continued to broadcast his Sandy Hook conspiracy theory. On December 28, 2014, he told his InfoWars audience, "the whole thing is a giant hoax. How do you deal with a total hoax? It took me about a year, with Sandy Hook, to come to grips with the fact that the whole thing was fake." Lombardi Decl., Ex. 17 (Heslin/Lewis Pl. Video Ex. 12).

11. On January 2, 2015, Jones (through FSS/InfoWars) published an article about Mr. Pozner's and Ms. De La Rosa's late son, Noah, titled "Sandy Hook Victim Dies (Again) in Pakistan." Lombardi Decl., Ex. 18 (Heslin/Lewis Pl. Ex. 59). The next week, he targeted Noah again, telling his audience that "Sandy Hook is a synthetic, completely fake with actors, in my view, manufactured [event]. I couldn't believe it at first. I knew they had actors there, clearly, but I thought they killed some real kids. And it just shows how bold they are that they clearly used actors. I mean, they even ended up using photos of kids killed in mass shootings here in a fake mass shooting in…Pakistan." Lombardi Decl., Ex. 19 (Heslin/Lewis Pl. Video Ex. 13).

12. Mr. Pozner again complained to YouTube. Jones then spent nearly an hour of his February 12, 2015 show to attacking Mr. Pozner directly, telling his audience that Mr. Pozner

was "going after the Second Amendment."  Lombardi Decl., Ex. 20 (Heslin/Lewis Pl. Video Ex. 14); Lombardi Decl., Ex. 10 (Pozner Affidavit).  During the episode, Jones broadcast Mr. Pozner's personal information and maps to addresses tied to Mr. Pozner's family, and promised he would personally visit Florida to investigate Mr. Pozner.  Lombardi Decl., *Id.* ¶ 9.

13.  Soon after, an InfoWars viewer began stalking Mr. Pozner and leaving death threats on his voicemail and email, telling him "you gonna die, death is coming to you real soon" and "LOOK BEHIND YOU IT IS DEATH." Lombardi Decl., Ex. 4 (Pozner/De La Rosa Amended Petition) ¶ 48.  That viewer was eventually apprehended by the FBI and sentenced to federal prison.  As a condition of her sentence, she was barred from accessing InfoWars content upon her release.  *Id.*; Lombardi Decl., Ex. 10 (Pozner Affidavit) ¶ 15.

14.  In June 2015, Jones dispatched one of his reporters, Dan Bidondi, to Newtown, Connecticut, where—on camera—Mr. Bidondi told local residents and town officials that they were "going to jail" for their lies, called them "scumbags," and yelled to passersby that "Sandy Hook was an inside job." Lombardi Decl., Ex. 21 (Heslin/Lewis Pl. Video Ex. 27); Lombardi Decl., Ex. 22 (Heslin/Lewis Pl. Video Ex. 28).

15.  On November 18, 2016, Jones told his InfoWars audience, "[t]he official story of Sandy Hook has more holes in it than Swiss cheese. . . .  If children were lost at Sandy Hook, my heart goes out to each and every one of those parents.  And the people who say they're parents that I see on the news.  The only problem is, I've watched a lot of soap operas.  And I've seen actors before.  And I know when I'm watching a movie and when I'm watching something real." Lombardi Decl., Ex. 23 (Heslin/Lewis Pl. Video Ex. 18).

16.  On April 22, 2017, in the episode "Sandy Hook Vampires Exposed," Jones again accused Ms. De La Rosa of conducting a fake interview with Anderson Cooper, warning his

viewers not to "believe any of it." Lombardi Decl., Ex. 24 (Heslin/Lewis Pl. Video Ex. 20); Lombardi Decl., Ex. 10 (Pozner Affidavit) ¶ 13.

17. After about two months, Mr. Heslin appeared on *Sunday Night with Megyn Kelly*, where he described holding his dead son with a bullet hole in his head and the harm Jones's lies caused to him and his family. *See* Lombardi Decl., Ex. 25 (Heslin/Lewis Pl. Video Ex. 22). Eight days later, on June 26, 2017, Jones ran an InfoWars feature claiming, "[t]he statement [Heslin] made, fact-checkers on this have said cannot be accurate. He's claiming that he held his son and saw the bullet hole in his head. That is his claim. Now, according to a timeline of events and a coroner's testimony, that is not possible." Lombardi Decl., Ex. 26 (Heslin/Lewis Pl. Video Ex. 23). Then on July 20, 2017, Jones (through FSS/InfoWars) rebroadcasted the June 26th feature in full, with Jones commenting, "[t]he stuff I found was they never let them see their bodies." Lombardi Decl., Ex. 27 (Heslin/Lewis Pl. Ex. 100).

18. Jones continued his lies that year, telling his audience on October 26, 2017 that Ms. De La Rosa's interview was part of the "fake newscasts, with blue screens" and that the shooting was "phony as a three-dollar bill." Lombardi Decl., Ex. 28 (Heslin/Lewis Pl. Video Ex. 24).

19. The Heslin/Lewis trial showed that Jones's false narrative has become so widespread that in 2016, one out of every four Americans—more than 75 million people— believed Movants were either possibly or definitely lying about the death of their children. Lombardi Decl., Ex. 29 (Aug. 1, 2022 Heslin/Lewis Trial Tr. Vol. 5) 37:1-11. Because of Jones, tens of millions of people believe that Movants are "actors with criminal intent, that this didn't happen, that they're trying to take people's guns away." *Id*. at 47:13-17.

**B. Jones knew he was lying, but defaming Movants was good for business.**

20. Jones has known that Sandy Hook was real from the start. In January 2013, only a month after the shooting, InfoWars' Chief Editor, Paul Watson, assured Mr. Pozner that Jones

knew that Sandy Hook was "a very real tragedy with very real victims." Lombardi Decl., Ex. 13 (Heslin/Lewis Pl. Ex. 48).

21.   Even by Jones's own account, by July 2015, he "realized [the Sandy Hook shooting] probably did happen" and "there was a good chance I was wrong" about the conspiracy theory he broadcasted to millions. Lombardi Decl., Ex. 30 (Aug. 3, 2022 Heslin/Lewis Trial Tr.) 17:23-18:9.  Around that time, Chief Editor Watson urged Jones to stop lying about Sandy Hook. On December 17, 2015, he texted: "This Sandy Hook stuff is killing us.  It's promoted by the most batshit crazy people like Rense and Fetzer who all hate us anyway.  Plus it makes us look really bad to align with people who harass the parents of dead kids. It's gonna hurt us with Drudge and bringing bigger names into the show." Lombardi Decl., Ex. 30 (Heslin/Lewis Pl. Ex. 73).

22.   But Jones did not stop because his lies about Sandy Hook were good for business. While Jones is best known for his broadcasts, his primary business is selling dietary supplements through FSS—and he uses his broadcasts to drive those sales.  The "vast majority of FSS revenues comes from the sale of Supplements." *In re Free Speech Systems, LLC*, Case No. 22-60043 (CML) (Bankr. S.D. Tex. 2022), *Declaration of W. Marc Schwartz In Support of Voluntary Petition and First Day Motion*s ¶ 29 [Dkt. No. 10].  FSS is a "single talent business" with "a unique audience that is highly loyal to Alex Jones and purchases products based on Alex Jones's credibility. . . . Historically, approximately 80% of FSS' revenue is derived from product sales[.]" *Id*. at ¶¶ 25, 31. Questioning mass shootings and other terrorist attacks has become a favored way for Jones to draw viewers and boost sales.  Indeed, Jones testified at trial about a wide variety of mass shootings and bombings, admitting that he told his audience they were all "false flags." *See* Lombardi Decl., Ex. 1 *(*Aug. 3, 2022 Heslin/Lewis Trial Tr. Vol.) 7, 55-60 (detailing Jones's claims that nearly all mass shootings and terrorist attacks in the last 15 years were false flags, including those at the

Boston Marathon, Sutherland Springs Church, Oklahoma City, Parkland, and Las Vegas). In December 2014, in the same video in which Jones broadcast Mr. Pozner's name and maps to his mailing address, Jones boasted that, conservatively, he reached 20 million viewers a week. Lombardi Decl., Ex. 20, (Heslin/Lewis Pl. Video Ex. 14).

23. To his audience, Jones portrayed his Sandy Hook "reporting" as real. But the state-court cases revealed that InfoWars' own managers and editors knew it was a lie. Evidence at the Heslin/Lewis trial showed that FSS staff and Jones's family joked about the absurdity of his claims. On November 18, 2016, the same day Jones told his InfoWars audience, "[t]he official story of Sandy Hook has more holes in it than Swiss cheese" and insinuated the parents were akin to "actors" on a "soap opera," Lombardi Decl., Ex. 23 (Heslin/Lewis Pl. Video Ex. 18), Jones's cousin and InfoWars manager Buckley Hamman joked to Mr. Watson, "Surely it's a conspiracy theory that they are trying to suppress our popularity so that lizard people can return to the ascension pad at Sandy Hook and feast on Sacrificed crisis actors! lol." Lombardi Decl., Ex. 31 (Heslin/Lewis Pl. Ex. 77).

**C. Movants sued Jones; Jones repeatedly refused to provide discovery.**

24. But this was no joke to Movants. According to trial testimony, Mr. Heslin "was shot at, his house was shot at, his car was shot at. There were bullet casings found in his driveway. There are many people who clearly think very intensely, have very intense negative feelings about him and are willing to act on it." Lombardi Decl., Ex. 29 (Aug. 1, 2022 Heslin/Lewis Trial Tr. Vol. 5) 48:4-9. Roy Lubit, an expert in psychiatry, testified that because of Jones's conduct, Mr. Heslin and Ms. Lewis have "very high levels of anxiety" and that "[p]robably more in a nonclinical write-up it would say they're terrified." *Id.* at 38:23-39:4. He further testified that, as a result, they have "pulled away from people tremendously" (*Id.* at 40:1-2), "withdrawn from historic friends" (*Id.* at 40:2-3), and even "withdrawn from society to an extent." *Id.* at 39:24-40:1. Ms.

Lewis sleeps with a gun, a knife, and pepper spray by her bed because she is terrified of being attacked. *Id*. at 55:1-3. Even in extreme heat, she refuses to turn her air conditioner on because she fears the sound may obstruct her ability to hear and evade an assailant. *Id*. at 55:3-6. Mr. Pozner has been subjected to harassment and threats from Jones's audience for years. Lombardi Decl., Ex. 10 (Pozner Affidavit) ¶ 15. He and his family were forced to move seven times. *Id*. ¶ 10. They have also been forced to take extreme steps to protect their privacy, such as maintaining post office boxes in multiple cities to confuse conspiracy fanatics and placing utility accounts in other names. *Id.* Even with these steps, conspiracy fanatics still routinely exchange Mr. Pozner's and Ms. De La Rosa's latest personal information and post those details online. *Id.*

25.  In 2018, Movants and more than a dozen of Jones's other victims sued Jones and FSS in state court.

i.  *The Heslin/Lewis Action*[3]

26.  On April 16, 2018, Mr. Heslin sued Jones, FSS, and related defendants. On July 13, 2018, the defendants moved to dismiss under the Texas Citizens Participation Act ("**TCPA**"). The state court entered a discovery order on August 31, 2018 requiring written discovery and depositions of Jones and other defendants in Mr. Heslin's case. *See* Lombardi Decl., Ex. 33 (Aug. 31, 2021 Combined Sanctions Hearing Tr.). Jones's counsel responded on October 1, 2018 with a statement claiming that they would not comply with the order. *Id.* at 8:13-16. Mr. Heslin promptly brought a motion for contempt. *Id.* at 8:17-19. The next day, Jones and his codefendants launched what the appellate court later found was a "frivolous" appeal. *Jones v. Heslin,* No. 03-19-00811-CV, 2020 WL 1452025 (Tex. App.—Austin, Mar. 25, 2020, pet. denied).

---

[3] Mr. Heslin and Ms. Lewis initially brought separate actions against Jones, which were consolidated prior to trial.

27. After Scarlett Lewis sued on October 31, 2018, the court ordered written discovery and depositions of Jones and other defendants. Lombardi Decl., Ex. 33 (Aug. 31, 2021 Combined Sanctions Hearing Tr.) 9:5-8. Again, the defendants failed to respond. *Id.* at 9:8-9. FSS was eventually deposed, but its representative was unprepared and unresponsive. *Id.* at 9:13-17. On March 21, 2019, Ms. Lewis then moved for discovery sanctions, asserting that the defendants: (i) failed to respond to any court-ordered requests for production; (ii) failed to prepare their corporate representative, who provided no meaningful testimony; (iii) failed to produce relevant videos; and (iv) spoliated social media evidence and video directories. *See generally* Lombardi Decl., Ex. 34 (July 6, 2021 Lewis Motion for Contempt). On April 3, 2019, the court granted Ms. Lewis's motion, found that Jones and his codefendants violated its discovery order, sanctioned them $8,100 for attorney fees, and denied their motion to dismiss under the TCPA. Lombardi Decl., Ex. 35 (April 3, 2019 Lewis Hearing Tr.) 52-53.

28. On August 30, 2019, Jones's appeal in Mr. Heslin's case was dismissed for lack of jurisdiction and the case was remanded to the trial court, which required Jones and FSS to comply with the discovery order. *Jones v. Heslin*, 587 S.W.3d 134, 135 (Tex. App.—Austin 2019, no pet.). When the defendants refused to provide any discovery or appear for depositions for another month, Mr. Heslin renewed his motion for contempt on October 1, 2019. After a hearing, the court granted the motion, sanctioned the defendants $25,000 for flouting its discovery orders, denied Jones's TCPA motion to dismiss, and ordered more discovery and depositions on Mr. Heslin's intentional-infliction-of-emotional-distress claim. Lombardi Decl., Ex. 33 (Aug. 31, 2021 Combined Sanctions Hearing Tr.) 14:3-9, 14:25-15:5.

29. On December 9, 2019, after Jones again defied discovery, Mr. Heslin moved for a default judgment. That motion alleged that the Debtors (i) refused to make good-faith responses

to written discovery; (ii) failed to preserve or produce documents they created relating to the Sandy Hook shooting and Movants; (iii) admitted to withholding thousands of emails; (iv) deleted relevant messaging systems during litigation; (v) failed to produce videos of relevant InfoWars episodes; and (vi) presented the same unprepared corporate representative they offered months before in the *Lewis* case. Lombardi Decl., Ex. 32 (Dec. 9, 2019 Heslin Motion for Default). The court later called the corporate representative's testimony "a shockingly offensive mockery of a corporate deposition." Lombardi Decl., Ex. 2 (Jan. 14, 2022 Combined Hearing Tr.) 659.

30. On December 18, 2019, the court held a hearing on Mr. Heslin's contempt motion. There, Jones's counsel represented that Jones and his codefendants would comply with discovery going forward:

> MR JEFFERIES [Jones's trial counsel]: I am certainly going to comply with [discovery] 100 percent, stay or no stay, moving forward, absolutely.
>
> THE COURT: So your point is let it come back to the trial judge who's going to try the case and see just how quickly you do that –
>
> MR. JEFFERIES: Exactly.
>
> THE COURT: – and how compliant you are with the order before we make potentially outcome determinative decisions?
>
> MR. JEFFERIES: Exactly right.
>
> THE COURT: All right.

Lombardi Decl., Ex. 36 (Dec. 18, 2021 Hearing Tr.) 80:23-81:13.

31. Because of this representation, the court did not enter a default judgment. Instead, it "assessed sanctions totaling $100,000 and held the defendants in contempt for intentionally disobeying the order." *See* Lombardi Decl., Ex. 37 (Apr. 1, 2022 Order on Motion for Sanctions) 3. The court's order stated, "Defendants represented at the December 18th hearing that they would continue to supplement discovery to belatedly comply with the October 18th order. The amount

- 12 -

of supplemental discovery is a factor that will be considered if the motion for sanctions is reconsidered on remand." Lombardi Decl., Ex. 38 (Dec. 20, 2019 Heslin Order on Motion for Sanctions) 2-3.

32. Jones and his codefendants did not supplement their discovery at any time during the appeal process. Lombardi Decl., Ex. 37 (Apr. 1, 2022 Order on Motion for Sanctions) 2. On March 25, 2020, the Third Court of Appeals sanctioned Jones and FSS $22,500 and ruled that their appeal of Mr. Heslin's case was "frivolous." *Jones v. Heslin,* 2020 WL 1452025 (Pet. denied). The Heslin and Lewis cases were remanded back to the trial court in June 2021. After Jones and FSS continued to fail to provide discovery, Mr. Heslin and Ms. Lewis again moved for contempt. *See* Lombardi Decl., Ex. 39 (Heslin Second Motion for Contempt); Lombardi Decl., Ex. 34 (July 6, 2021 Lewis Motion for Contempt). On August 31, 2021, the court held a consolidated hearing on contempt motions filed by both Heslin and Lewis and Pozner and De La Rosa. *See generally* Lombardi Decl., Ex. 33 (Aug. 31, 2021 Combined Sanctions Hearing Tr.).

ii. *The Pozner/De La Rosa Action*

33. Like Mr. Heslin, Mr. Pozner and Ms. De La Rosa filed a defamation action against Jones and related defendants on April 16, 2018. They later amended their complaint to add intentional-infliction-of-emotional-distress claims. Lombardi Decl., Ex. 4 (Pozner/De La Rosa Amended Petition) ¶¶ 83-93.

34. On May 29, 2018, counsel to Mr. Pozner and Ms. De La Rosa served written discovery requests on Jones. *See* Lombardi Decl., Ex. 40 (July 27, 2021 Pozner/De La Rosa Motion for Sanctions) ¶ 1. Responses to those requests were due 30 days later. *Id.* After 28 days, however, Jones moved to dismiss under the TCPA, which stayed all discovery. *Id.* When that motion was denied, Jones and his codefendants appealed, continuing the discovery stay. *Id.*

35. Jones lost his appeal. When the cases were remanded to the trial court in June 2021—more than three years since the discovery requests were served—Jones and his codefendants still had not provided discovery. Lombardi Decl., Ex. 37 (April 1, 2022 Order on Motions for Sanctions) 3. After the remand, Jones again refused to provide any discovery. *Id.* Mr. Pozner and Ms. De La Rosa moved for sanctions on July 27, 2021. *Id.* at 12. The motion detailed that: (i) Mr. Pozner and Ms. De La Rosa served the Debtors with written discovery on May 29, 2018; (ii) Jones "spent the following year successively violating numerous discovery orders in this Court and the Superior Court of Connecticut in the other Sandy Hook lawsuits[;]" (iii) defendants' counsel "stated the discovery situation would be immediately corrected and begged the Court to postpone ruling on default sanctions pending those efforts" at the December 18, 2019 hearing; (iv) "over the next year and a half, Defendants made no efforts whatsoever to address the discovery situation[;]" and (v) Jones and his codefendants continued to ignore their discovery duties after the case was remanded, despite Movants providing an added grace period. Lombardi Decl., Ex. 40 (Pozner/De La Rosa Motion for Sanctions) 1-11.

**D. As a last resort, the court sanctioned Jones with default judgments establishing his liability.**

36. On September 27, 2021, after a hearing on Jones's and his codefendants' repeated discovery abuses, the court rendered default judgments in the Pozner/De La Rosa and Heslin/Lewis Actions—establishing liability in both. In the Pozner/De La Rosa Action, the court explained that it had "more than a sufficient record to conclude that an escalating series of judicial admonishments, monetary penalties, and non-dispositive sanctions have all been ineffective in deterring the abuse" and stated that it "considered lesser sanctions and determined they would be inadequate to cure the violation in light of the history of the Defendant's conduct." Lombardi Decl., Ex. 41 (Pozner/De La Rosa Default Judgment) 4. The court found that Jones and his

codefendants "unreasonably and vexatiously failed to comply with their discovery duties" and engaged in a "general bad faith approach to litigation," as further evidenced by calling the cases "show trials." *Id.* at 2, 4. It noted "the discovery misconduct is properly attributable to the client and not the attorney, especially since Defendants have been represented by seven attorneys over the course of this suit. Regardless of the attorney, Defendants' discovery abuse remained consistent." *Id.* at 3.

37. In the Heslin/Lewis Action, the court held that Jones and his codefendants displayed "flagrant bad faith and callous disregard for the responsibilities of discovery" and engaged in "pervasive and persistent obstruction." Lombardi Decl., Ex. 42 (Lewis Default Judgment) 3; Lombardi Decl., Ex. 3 (Heslin Amended Default Judgment) 3-4 (together, the "**Heslin/Lewis Default Judgments**"). The Heslin order also found that "Defendants' egregious discovery abuse justifies a presumption that its defenses lack merit." Lombardi Decl., Ex. 3 (Heslin Amended Default Judgment) 4.

38. Under the default judgments, the court found Jones liable on all claims, conclusively establishing the allegations in the Heslin/Lewis and Pozner/De La Rosa Amended Petitions. All that remained to litigate was the amount of damages for that liability.

**E.   Even after the default judgments, Jones continued to refuse to provide discovery.**

39. The default judgments did not deter Jones and FSS from abusing discovery. On December 15, 2021, Movants had to bring more sanctions motions after the Debtors failed to produce a deponent for a corporate deposition on topics relating to damages. Lombardi Decl., Ex. 43 (Dec. 15, 2021 Motion for Sanctions Regarding Corporate Deposition). At a January 14, 2022 hearing on the motions, the Court stated:

> I'm confident that there are people who don't want our legal system to work and will be happy to have me forced into deciding almost everything about this case, but that's not what I want. I want it to work, but it only works if

> discovery works. And what I have seen so far is literal years of blatant discovery abuse and intentional discovery abuse, and I'm tired of that.

Lombardi Decl., Ex. 2 (January 14, 2022 Hr'g Tr. 84:4-11).

40. On January 24, 2022, the court granted Movants' motions for sanctions and ordered the Debtors to pay Movants' expenses and appear for another deposition. Lombardi Decl., Ex. 44 (Jan. 24, 2022 Order on Motion for Sanctions). Movants then filed another sanctions motion on February 22, 2022, after the Debtors failed to prepare a corporate deponent for the fifth time. Lombardi Decl., Ex. 45 (Feb. 22, 2022 Motion for Sanctions Regarding Corporate Deposition). On April 1, 2022, the court granted the sanctions motions and awarded Movants all expenses incurred in connection with discovery throughout the cases. Lombardi Decl., Ex. 37 (April 1, 2022 Order on Motion for Sanctions). The court found Jones and his codefendants "intentionally thwarted the legitimate discovery process in these [Pozner/De La Rosa and Heslin/Lewis] cases," which "exhibits a disregard for and disrespect of the integrity of this Court and our judicial system." *Id.* at 4. The court went on to find that "Plaintiffs' discovery of facts necessary to properly present their claim for damages has been irreparably prejudiced in virtually all respects. Absent severe action from this Court, Defendants will ultimately profit from their sabotage of the discovery process." *Id.*

### F. After a lengthy trial, a Texas jury awarded exemplary damages for Jones's knowing, "atrocious and utterly intolerable" conduct.

41. In the Heslin/Lewis Action, after the court found Jones liable on all counts, it held a damages trial before a jury. Jones, Mr. Heslin, Ms. Lewis, experts, and witnesses testified over a nine-day trial. On the stand, Jones admitted that the Sandy Hook shooting was "100% real." Lombardi Decl., Ex. 1 (Aug. 3, 2022 Heslin/Lewis Trial Tr. Vol. 7) 16:24.

42. At trial, the judge explained that Jones and his codefendants were precluded from contesting any facts relating to their liability:

> We've already had this conversation multiple times in this trial, in addition to it before this trial, the time for that was during discovery, when Mr. Jones chose not to fully participate. It is not the time to do that now. If there is anything that he would like to put forth as a defense, he needed to do it a year ago during the discovery process. It's too late now.

Lombardi Declaration, Ex. 46 (Aug. 2, 2022 Heslin/Lewis Trial Tr. Vol. 6) 200.

43. The court went on to detail its reasoning for rendering the default judgments and explained that Jones could no longer contest liability:

> My ruling, which was based on a longstanding principle in the law that, if you intentionally repeatedly, and over years in this case, again and again, refuse to participate in discovery, that is proof that you do not have a meritorious defense. That was the basis of my ruling. You cannot attack that in this trial.

*Id.* at 201:1-6.

44. After Jones ignored these instructions, the judge instructed him as follows:

> You're also under oath to tell the truth. You've already violated that oath twice today in just those two examples. It seems absurd to instruct you again that you must tell the truth while you testify, yet here I am: You must tell the truth while you testify…. You are under oath. That means things must actually be true when you say them.

*Id.* at 202:5-10.

45. The court instructed the jury that "Defendants Alex Jones and Free Speech Systems, LLC committed defamation against Neil Heslin," and that Jones "knew the statements were false" or had "a high degree of awareness that they were probably false, to an extent that [Jones] in fact had serious doubts as to the truth of the statements" when he made them. Lombardi Decl., Ex. 5 (Heslin/Lewis Compensatory Damages Jury Charge) 4; Lombardi Decl., Ex. 6 (Heslin/Lewis Exemplary Damages Jury Charge) 4. It also instructed jurors that "Defendants Alex Jones and Free Speech Systems, LLC committed intentional infliction of emotional distress against Neil Heslin and Scarlett Lewis in a continuing course of conduct from 2013 to 2018," and such conduct

was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 6. Based on those instructions and the evidence, the jury awarded Mr. Heslin and Ms. Lewis more than $4 million in compensatory damages and $45 million in exemplary damages. Lombardi Decl., Ex. 7 (Heslin/Lewis Final Judgment).

46. Although exemplary damages are normally capped by Texas statute, the court found that a statutory exception to the cap applied because Jones violated the Texas Penal Code by "knowingly or intentionally" causing injury to Movants, who were already suffering "severe emotional disturbance" due to the loss of their son. *Id.* at 3; Tex. Civ. Prac. & Rem. § 41.008(c)(7); Tex. Penal Code § 22.04.

Dated:  May 12, 2023

/s/ *Jennifer J. Hardy*

| | |
|---|---|
| **WILLKIE FARR & GALLAGHER LLP**<br>Jennifer J. Hardy (Texas Bar No. 24096068)<br>600 Travis Street<br>Houston, Texas 77002<br>Telephone: 713-510-1700<br>Facsimile: 713-510-1799<br>Email: jhardy2@willkie.com<br><br>**AND**<br><br>Rachel C. Strickland (admitted *pro hac vice*)<br>Stuart R. Lombardi (admitted *pro hac vice*)<br>Ciara A. Sisco (admitted *pro hac vice*)<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone: 212-728-8000<br>Facsimile: 212-728-8111<br>Email: rstrickland@willkie.com<br>         slombardi@willkie.com<br>         csisco@willkie.com<br><br>*Bankruptcy Co-Counsel to the Texas Plaintiffs* | **MCDOWELL HETHERINGTON LLP**<br>Avi Moshenberg (TX Bar No. 24083532)<br>1001 Fannin Street<br>Suite 2400<br>Houston, Texas 77002<br>Telephone: 713-337-5580<br>Facsimile: 713-337-8850<br>Email: avi.moshenberg@mhllp.com<br><br>**AND**<br><br>**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, PC**<br>Jarrod B. Martin (TX Bar No. 24070221)<br>1200 Smith Street<br>Suite 1400<br>Houston, Texas 77002<br>Telephone: 713-356-1280<br>Facsimile: 713-658-2553<br>Email: jarrod.martin@chamberlainlaw.com<br><br><br><br>*Bankruptcy Co-Counsel to the Texas Plaintiffs* |

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing instrument was filed and served on all persons entitled to receive notice via operation of this Court's CM/ECF system on May 12, 2023.

                                        */s/ Jennifer J. Hardy*
                                        Jennifer J. Hardy