# Exhibit 45

# D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN and | § | IN DISTRICT COURT OF |
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

# D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER and | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 345th DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC | § | |

---

**PLAINTIFFS' MOTION FOR SANCTIONS REGARDING CORPORATE DEPOSITION**

---

> THE COURT: If we have a similar experience file a motion again, Mr. Bankston. Because then I'll just -- in fact, then send me the transcript, you can put the new motion on top of it. You don't need to pull out every single excerpt, you can just send me the whole transcript, I'll read the whole transcript and, um, then I'll need a proposed order if this happens again.

(*See* Ex. 1, January 14, 2022 Transcript, p. 83).

Plaintiffs bring this Motion for Sanctions Regarding Corporate Deposition because this Court's explicit instructions for the deposition were not followed in any respect. Once again, the deposition was totally inadequate with the new representative giving the same types of non-answers as the previous representatives. Pursuant to the Court's instructions, Plaintiffs have provided the transcript, and this Motion will not feature pull-outs of the

testimony. Instead, Plaintiffs will briefly summarize the salient points of this catastrophic failure to follow the Court's instructions.

## FACTS

On January 14th, this Court once again ordered Defendants to provide corporate testimony after they failed to prepare their latest designee, Daria Karpova. At the hearing, Defendants' counsel Jacquelyn Blott told the Court that she was "relatively certain that it will be more than one person" designated by Defendants for this fifth remedial deposition. (Ex. 1, January 14, 2022 Transcript, p. 85). The Court ordered the deposition to occur within a month, and Ms. Blott stated she would "dedicate all my time to that." (*Id.* at p. 85-86).

Defendants waited two weeks before selecting and preparing any designee. On February 1, 2022, a single designee was selected and informed that she would be testifying. This designee began her preparation that day, and she was scheduled to testify on February 14th. The same designee was also selected to testify for the corporate deposition in the *Fontaine* case the following day on February 15th. At that point, the designee had 12 remaining days to prepare for 16 distinct topics in two separate corporate depositions.

The choice of designee was certainly odd. Defendants selected Brittany Paz, a Connecticut criminal defense lawyer in her tenth year of practice with no prior connection to the company. Ms. Paz has no special expertise in any of the topic areas, and no connection to these lawsuits except one: Ms. Paz previously worked for several years as a junior associate of Norm Pattis, the attorney representing Defendants in the *Lafferty* case in Connecticut. Ms. Paz was initially offered $25,000 to act as corporate representative, but she negotiated the amount to $30,000. This amount was finalized before Ms. Paz ever performed any work.

Ms. Paz's preparation can be summarized as follows:

- She claimed to have spent a bit over 100 hours watching videos, reviewing documents, and interviewing employees. This preparation was split between the 16 topics in the two depositions.

- Ms. Paz did not watch all the videos in the Plaintiffs' petitions, nor did anyone catalog their content for her. She did not review all the documents produced by Defendants.

- To prepare for deposition, neither Ms. Paz nor the company engaged in any additional search for documents beyond what was already produced. None of the company's various communications systems were searched.

- Ms. Paz spent three days interviewing the following InfoWars employees:

| | |
|---|---|
| Alex Jones | Defendant |
| Daria Karpova | Sound engineer for the events of the suit. |
| Rob Dew | Writer/anchor |
| Kit Daniels | Writer |
| Adan Salazar | Writer |
| Paul Watson | Contractor/UK-based editor |
| Melinda Flores | Bookkeeper |
| Robert Roe | Outside accountant consultant |

Ms. Paz also spoke with two former employees: Michael Zimmerman, a former IT employee, and Nico Aguilar, a former production assistant.

In preparing for deposition, Ms. Paz did not speak or try to speak with any of the following individuals:

| Owen Shroyer | Host / Defendant |
| --- | --- |
| Tim Fruge | Operations Manager, in charge of evidence preservation |
| Scott Bronson | Manager of InfoWars Affiliate Relations Department |
| Jamie White | Editor |
| Mikael Thalen | Former editor. Kit Daniels testified in *Lafferty* that Mr. Thalen oversaw fact-checking from 2014-2018. |
| Buckley Hamman | One of the two most senior people at InfoWars during the Sandy Hook coverage, according to Editor Paul Watson.<br><br>Mr. Hamman is Alex Jones' cousin.<br><br>Mr. Hamman is part of several key emails, including the email warning that Jones' sources were "batshit crazy." |
| Anthony Gucciardi | The other of the two most senior people at InfoWars during the Sandy Hook coverage, according to Paul Watson.<br><br>Mr. Gucciardi was also part of the "batshit crazy" discussion. |
| Kurt Nimmo | Former head writer, 2008-2018 |
| Aaron Dykes | Former writer for Sandy Hook coverage |
| Melissa Melton | Former writer for Sandy Hook coverage |
| Jakari Jackson | Former on-air-reporter / writer during the Sandy Hook coverage |
| Darren McBreen | Former editor for Sandy Hook coverage |
| David Knight | Former anchor who left in 2020, researched Neil Heslin, features heavily in Ms. Paz's notes. |

| | |
|---|---|
| LeAnne McAdoo | Former on-air-reporter / writer who covered Sandy Hook, articles appear in relevant videos |
| Dan Bidondi | Former on-air-reporter / writer who traveled to Newtown multiple times and harassed local residents |
| Rob Jacobson | Video editor from 2000-2017, complained about Sandy Hook coverage |
| Joshua Owens | Video editor circa 2014-2017, complained about Sandy Hook coverage |
| InfoWars Archivist | Archivist employee described by Mr. Jones on his December 29, 2021 show as a "bloodhound who can find anything." |
| "Mr. Love" | The company's accountant |
| Steve Pieczenik | InfoWars source for Sandy Hook |
| Jim Fetzer | InfoWars source for Sandy Hook |
| Wolfgang Halbig | InfoWars source for Sandy Hook |

As shown in the deposition transcript, the company did not follow this Court's instructions in preparing the designee. (*See* Ex. 2, Deposition of Brittany Paz). Ms. Paz was unable to give adequate testimony on *any* of the eight topics ordered by the Court.

## ARGUMENT

## I.    Defendants did not Follow the Court's Instructions in Preparing Ms. Paz.

### A.    Ms. Paz was not prepared to discuss the sourcing and research for the videos described in Plaintiffs' petitions.

Concerning this topic, the Court gave specific instructions:

> They should watch every video in the weeks leading up to the
> deposition. They should identify for themselves, for the

company, every statement that they believe in those videos has a source and they should make efforts to determine what that source was and they should be able to answer intelligently as to the sources and the efforts they have taken to determine those sources. They need to be able to speak about everything Alex Jones said in any of those videos, about every piece of paper he holds up, every piece of paper he shows on that desk camera. They need to search for every person quoted in each video. And by that I mean they need to search every single thing InfoWars or Free Speech Systems or Alex Jones has in their possession on paper, in email, on a text, on any other communication system or in the mind of any employee or former employee or guest of the show. Anything and everything. And they need to be prepared to identify and describe the role of every employee involved with every video.

(*See* Ex. 1, January 14, 2022 Transcript, p. 79-80).

Ms. Paz and the company did not even come close to following these instructions. She did not watch every video in the Plaintiffs' petitions, nor did anyone at InfoWars watch all the videos and make information available to her. Ms. Paz claimed that many of the key videos were unavailable to her even though Ms. Kaprova had been shown the same videos by Defendants' counsel for her December 2021 deposition.

Ms. Paz and the company did not identify and make efforts to determine all the sources in the videos. Ms. Paz had not reviewed the relevant "Daily Show Logs" for the videos. Ms. Paz and the company did not search for the individuals quoted in the videos. Ms. Paz and the company did not search any emails, texts, and other communications systems whatsoever. Ms. Paz and the company did not reach out to the former employees involved in its Sandy Hook coverage. Ms. Paz prepared an excel chart of videos she viewed, but many of the videos she devoted time to watching were not in Plaintiffs' petition, with many of them occurring after the suit was filed when Jones was commenting on the lawsuits themselves. (*See* Ex. 3, Ms. Paz's Chart of Videos). In addition, while this chart contains spaces for listing

the InfoWars' employees who researched the videos and the sources they used, the overwhelming majority of the spaces are empty. (*Id.*). Many of those spaces listed people at InfoWars who Mr. Paz did not speak with. (*Id.*). Sample pages are shown below:

| | DESCRIPTION | REPORTER | INTERVIEWED | LOCATION | SOURCES |
|---|---|---|---|---|---|
| | "1. Why Nose disappears; 2. people walking in circles; 3. Why did they say they didn't catch anyone in the woods when they did; 4. why was the school closed before then after; 5 why Bloomberg sent an email the day before; 5. why didn't they launch emergency helicopters; 6. Tell us why ambulance is parked for an hour and half..." | | | | |
| | "Tell us why this appears to be phonier than a $3 bill." | | | | |
| | AJ- "Copyright claims defeated." | | | | |
| | AJ- "They'll probably take you out." "That's how they do it now, they kill you and your family." | | | | |
| | Have documents now that the school never existed. | | | | |
| | | | | | Infowars article: "Six year old child suspended for making gun shape with hand." |
| | Break | | | | |
| | "Bombsell Info" breaking today: school suddenly reopened then tore it down, school is filthy." | | Halbig | | |
| | AJ "It didn't look like a real school, then you add everything together and it looks like a prop, a drill" | | | | |
| | "Did they kill real kids? Maybe, maybe not" "Just doesn't add up." | | | | |
| | Bombshell-- subpoenas have been issued. | | | | |
| | Thinks it will show that school was not in operation. | | | | |
| | Turned off default training. | | | | |

| | DESCRIPTION | REPORTER | INTERVIEWED | LOCATION | SOURCES |
|---|---|---|---|---|---|
| | Don't let paramedics inside school. | | | | |
| | AJ "So they override the default settings? YOU'RE saying Standard OP ignored?" | | | | |
| | Declared legally dead in 8 mins. | | | | |
| | Where did the 500 children go that day? | | | | |
| | Biohazard company to decontaminate school | | | | |
| | AJ- "Continuing with the 16 points." | | | | |
| | Lieutenant working a construction detail less than 2 miles away but stayed at his off duty job for 4 hours. Another female officer left the duty site to go to the shooting but he didn't? | | | | |
| | "They want me to stop asking these questions. Why?" | | | | |
| | "SH elementary school had highest level of lead paint and asbestos and PCP." | | | | |
| | AJ- "bulldozed school now." | | | | |
| | AJ- "Green screen with Anderson cooper and staged interviews and actors playing parts of multiple people." | | | | |
| | What is your take?  We know they've staged other stuff. | | | | |
| | Halbig- using supposedly live feed. | | | | |
| | AJ- about Anderson cooper and cut to wider shot can see garbage blowing and thenblows back like its on a loop." | | | | Cut of video of Anderson Cooper interview |
| | Halbig- where did this script come from? | | | | |
| | 14:30- AJ says that Bloomberg had his networks ready 2 days before. | | | | Source? |
| | 14:55 AJ says Anderson Cooper was in the CIA, runs the hoaxes at CNN. | | | | Cut to footage of CNN pretending they were in Syria on a green screen. |

**B.    Ms. Paz was not prepared to discuss the individuals involved in the production of the videos described in Plaintiffs' petitions.**

For this topic, the Court gave the same instructions as the previous topic, which the company did not follow. As a result, Ms. Paz could not testify about the individuals involved in the videos and the roles they played, nor did she take appropriate steps to find out. Ms. Paz brought a two-page document to deposition which had a list of employees for the dates of ten of the twenty-two videos in the Plaintiffs' petitions. (*See* Ex. 4, List of Employees). It only covered dates from 2013-2015. Some dates only listed a single employee.



Ms. Paz did not know the origin of this document or the meaning of the highlights. Ms. Paz only spoke to three people on this entire list, and she had no information regarding the other employees and former employees or their roles in the videos. Ms. Paz openly admitted she could not address this topic.

**C.    Ms. Paz was not prepared to discuss internal editorial discussions regarding InfoWars' coverage of the Sandy Hook shooting.**

For this topic, the Court gave the same instructions as the previous topic, which the company did not follow. As such, Ms. Paz could not testify. In fact, Ms. Paz gave the same answer as the former representative Ms. Karpova, claiming that <u>the company had no</u>

editorial discussions whatsoever. Because Ms. Paz claimed there were no editorial

discussions, she claimed that no preparation was even needed on this topic.

    **D.**    **Ms. Paz was not prepared to discuss the company's knowledge of the Plaintiffs.**

For this topic, the Court gave the following instructions:

> The company's knowledge of the plaintiffs. Clearly the representative who was sent did not even try to determine what the company knew, since she had no knowledge of documents that were provided by the company she was there representing in the discovery in these cases. So, I consider it to be minimum efforts for the corporate representative to review every document produced by the company in this litigation prior to their deposition.

(*See* Ex. 1, January 14, 2022 Transcript, p. 81).

Ms. Paz did not review every document, nor did the company have individuals review

the documents and make information available to her. Ms. Paz had never seen key

documents, videos, and communications relating to the Plaintiffs, nor spoken to the

individuals involved. Ms. Paz was questioned at length about the Plaintiffs, and she was

unable to give meaningful testimony about the company's knowledge or any of the problems

raised in Plaintiffs' previous sanctions motion.

    **E.**    **Ms. Paz was not prepared to discuss the documents produced by the company in response to Plaintiffs' discovery requests.**

For this topic, the Court gave the same instructions as the previous topic. Yet as noted

above, Ms. Paz did not review every document, nor did the company have individuals review

documents and make information available to her about their contents or organization. Ms.

Paz was also totally unfamiliar with the production process, including where documents

were originated or where they were stored.

**F.      Ms. Paz was not prepared to discuss the audience reach of the videos described in Plaintiffs' petitions.**

For this topic, the Court gave the same requirements, but also added the following instruction:

> The audience reach of the videos described in the plaintiff's petition. If it is the case that Free Speech Systems, InfoWars, and Alex Jones do not track who plays their videos, I know it is the case that they track where the stuff they sell gets sold; and that information will need to be provided so that we can go around in the back to see where these videos were played. Does that make sense? I mean, the videos are Alex Jones talking, Alex Jones selling some stuff. He may not know who plays it because he puts it on the internet and says, play it if you want. Maybe that's true. But he knows who is buying his stuff. And so, we'll need that information to answer the audience reach of these videos.

(*See* Ex. 1, January 14, 2022 Transcript, p. 82-83).

Ms. Paz had no knowledge of the various ways in which Mr. Jones' show was broadcast. Just like Ms. Karpova, Ms. Paz knew nothing about which or how many radio stations, cable packages, over-the-air television, OTT systems, satellite, shortwave or other mediums by which InfoWars programming is disseminated. She had never heard of GCN, the company's co-defendant in *Lafferty* which distributes InfoWars on various radio stations. Audience data from GCN was featured in Plaintiffs' motion for sanctions.

In the previous corporate deposition, Ms. Kaprova testified that she would need to consult with InfoWars' Affiliate Relations Department to answer these questions about audience reach. InfoWars' Affiliate Relations Department and its manager Scott Bronson were discussed in Plaintiffs' sanctions motion and during the oral hearing. Yet Ms. Paz had never even heard of an Affiliate Relations Department or Mr. Bronson.

As a result, Ms. Paz had no knowledge of internal audience figures. She was also unaware that Defendants recently produced a deposition transcript in the *Lafferty* case which references an exhibit containing specific audience figures. That exhibit has never been produced in Texas, and Ms. Paz wrongly believed the company has never utilized such audience figures. Ms. Paz admitted she could testify about the figures cited in the *Lafferty* email. Finally, Ms. Paz testified that she took no specific steps to utilize the company's sales information to try and produce useful conclusions about audience reach.

### G.   Ms. Paz was not prepared to discuss efforts made by the company to preserve potential evidence.

Concerning this topic, the Court gave the following instructions:

> Seven, efforts made by the company to preserve potential evidence. Similar. If she shows up again, or I'm sure we'll get a new one because that's the way this works, and that person says, "I don't know," then they will have disregarded the orders I am making today. Your client, Ms. Blott, will have violated the orders I am making today. I do not want, "I don't know," "I'm guessing," "I think," "maybe," or "I infer" to be part of the answer at all...Not, "I think maybe something happened somewhere, I'm new to the company." I don't care if it's their first day with the company. If you designate them, they better have answers.

(*See* Ex. 1, January 14, 2022 Transcript, p. 81-82).

Ms. Paz did not give unequivocal answers. In the 100-page condensed transcript, Ms. Paz answered 219 times with the phrase "I think," another 92 times with the phrase "I don't think," and 51 times with the phrase "I believe," not to mention ceaseless variations of could, might, may, possibly or potentially.

As it concerns the topic of evidence preservation, Ms. Paz did not know anything about when and what the company did to preserve evidence. Much like Ms. Karpova, she did not know when a litigation hold was issued or how that happened. In addition, Ms. Paz did

not even talk to InfoWars Operations Manager Tim Fruge, who was identified as the individual who coordinated InfoWars' efforts to preserve evidence.

Ms. Paz knew nothing about efforts to preserve or search various communications systems inside InfoWars, such as Rocket.Chat, Slack, Wire, BaseCamp, or Pigeon. Shortly before Ms. Paz's deposition, Defendants produced a deposition transcript from *Lafferty* of InfoWars former head writer Kurt Nimmo being shown a BaseCamp message from a colleague warning about "crisis actors" that was never produced in this case. Ms. Paz confirmed that none of these systems were searched for this deposition, and she had no idea what steps at preservation or search were ever taken.

### F.   Ms. Paz was not prepared to discuss the company's business structure and relationship with other parties.

For this topic, the Court gave the following instructions:

> The last is the company's business structure and relationship with other parties. Honestly, the idea that I have to explain what that means to a corporation is again ridiculous. No more answers of, well, I didn't talk to Mr. Jones, I'm not really sure, I'm new, nobody works here, it's just all, I don't know, fairy dust that makes these videos go out. None of that. They know. This company knows. Mr. Bankston gets to know.

(*See* Ex. 1, January 14, 2022 Transcript, p. 83).

Ms. Paz could not answer basic questions about the business structure and the company's relations with other parties. In addition, Defendants recently produced a deposition transcript from the *Lafferty* case which references a company organizational chart which was never produced in Texas, but Ms. Paz testified that no such charts exist. Ms. Paz also could not testify about InfoWars, LLC and whether it conducted business operations relevant to this suit.

This summary only scratches the surface of the deficiencies in Ms. Paz's deposition. A review of the transcript shows that Defendants ignored every instruction given by the Court and that she was unprepared to testify about every single one of the ordered topics.

## II.    The Selection of Ms. Paz was Irrational and Shows Bad Faith.

Courts have recognized there are occasions where it makes sense to designate someone outside the company as a corporate representative. Perhaps a lawyer who has represented the company for many years could be suitable due to his wealth of knowledge. Sometimes a former employee can be a useful designee when they are well equipped to answer based on their past knowledge. On rare occasions, a company might designate an expert or outside vendor if the specific deposition topic is highly technical.

Yet in this case, there was no rational reason to select Ms. Paz to testify. Ms. Paz indicated she had no special knowledge of the company, no special expertise in news media, no special expertise in corporate finance, and no special expertise in information technology. She had no prior connection to the company and no understanding of any relevant facts prior to February 1, 2022. Defendants selected Ms. Paz to provide a buffer and to obfuscate on InfoWars' behalf.

An identical situation arose in the *Actos* MDL. As described by Judge Rebecca Doherty:

> Only one witness was presented and that witness *had no personal or first hand corporate knowledge of any kind* of any of the topics about which he was questioned. Rather, the PSC argues he was, in effect, merely a hired gun brought in by Takeda to provide a buffer and to obfuscate on Takeda's behalf—and this Court, after review of the 30(b)(6) deposition, cannot say the deposition does not support that argument.

*In re Actos (Pioglitazone) Products Liab. Litig.,* No. 6:11-MD-2299, 2014 WL 2872299, at *8 (W.D. La. June 23, 2014) (emphasis in original). In this case, a review of Ms. Paz's deposition

transcript leads to the same conclusion. Much like in this case, the Takeda representative in

*Actos* had only reviewed selected information and talked to limited employees:

> Takeda had designated Daniel L. Regard, II, *an electronic discovery consultant* who *did not and does not work for any Takeda entity,* other than as a consultant, but rather, was retained, it would seem, solely for the purpose(s) of this litigation and to act as Takeda's 30(b)(6) designee. In preparation for the deposition, Mr. Regard – again, who had no personal or first hand corporate knowledge of any kind of any Takeda entity – testified he conducted dozens of employee interviews, went on site visits, and reviewed numerous Takeda documents and policies in preparation for the deposition. However, it is clear from a review of the interviews he conducted that Mr. Regard spoke only to certain and select Takeda employees about certain and select issues related to the subject matter designated for the 30(b)(6) deposition. For example, it is not at all clear that Mr. Regard spoke to many information technology ("IT") employees at Takeda, and, his deposition reflects, he did not have a strong grasp of Takeda's actual IT procedures and their interplay with litigation hold policies and procedures.

*Id.* at *9 (emphasis in original). The *Actos* court noted that even for the employees which

were interviewed, important subject matters were omitted. *Id.* ("[I]t is clear from the

deposition transcript there were a number of important issues related to the litigation holds

that Mr. Regard simply did not question Ms. Calahan about."). Faced with this same situation,

the *Actos* court found itself "perplexed" by the selection and preparation of the deponent:

> As Mr. Regard had *no personal knowledge* or *first hand corporate knowledge* concerning these issues himself – having never worked for Takeda other than as a consultant and having only been retained to answer questions at Takeda's 30(b)(6) deposition – the Court is perplexed as to how Mr. Regard could have been expected to provide definitive and comprehensive answers to the many questions specifically ordered by the magistrate judge and, in fact, a careful review of his deposition shows that in large part, he did not.

*Id.* at *34 (emphasis in original). As in *Actos,* the selection of Ms. Paz made no sense except as a device "to provide a buffer and to obfuscate on [InfoWars'] behalf." *Id.* at 8.

## III.   The Topics Required More than One Designee.

Ms. Paz repeatedly testified in both of her depositions that no single person could possibly carry out the preparation required for all of the topics. Plaintiffs agree. The law requires that more than one individual must be designated if more than one is needed to testify fully about the notice's subject matters. *See In re Fina Oil & Chem. Co.*, No. 13-98-640-CV, 1999 Tex. App. LEXIS 1751, at *14–15 (Tex. App.—Corpus Christi Mar. 11, 1999, orig. proceeding) (Rule "consistently construed to require that a corporation 'must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable, and binding answers on behalf of the corporation.'") (first quoting *Marker*, 125 F.R.D. at 126 (M.D.N.C. 1989); then quoting *Allstate Tex. Lloyds v. Johnson*, 784 S.W.2d 100, 103 (Tex. App.—Waco 1989, orig. proceeding)); cf. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146 (10th Cir. 2007) ("The law is well-settled that corporations have an 'affirmative duty' to make available as many persons as necessary to give 'complete, knowledgeable, and binding answers' on the corporation's behalf.") (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999)); *SEC v. Goldstone*, 301 F.R.D. 593, 646-47 (D.N.M. 2014) (same); *Myrdal v. State*, 248 F.R.D. 315, 317 (D.D.C. 2008) (A corporation "is under a duty to designate more than one deponent if it is necessary to do so in order to respond to the relevant areas of inquiry.").

In this case, no one person could be reasonably capable of testifying to all the topics in both the Fontaine and Sandy Hook deposition notices, especially with 12 days of

preparation beforehand. By sending Ms. Paz, a single designee with no prior knowledge or expertise, Defendants guaranteed that full and adequate preparation would be impossible.

## IV.     Defendants Failed to Timely Designate and Prepare Ms. Paz.

When faced with a deposition notice, the rules require an organization to respond a reasonable time *before* the deposition setting forth its designee(s):

> In response, the organization named in the notice must - a reasonable time before the deposition - designate one or more individuals to testify on its behalf and set forth, for each individual designated, the matters on which the individual will testify.

Tex. R. Civ. P. 199(b)(1); *see also* 3 Tex. Prac. Guide Pers. Inj. 2d § 8:336, Corporate depositions ("The response must be made a reasonable time before the deposition."). Here, Defendants did not provide any response or disclose the identity of their designee in the month before the deposition. With two business days remaining before the deposition, Plaintiffs' counsel asked Defendants to explain why they had not identified their witness. (Ex. 5, February 9, 2022 emails between counsel). As short time later, Defendants' counsel stated that Brittany Paz had been selected. Defendants' counsel stated:

> FSS is designating her as the corporate representative *now* as FSS has ultimately decided that she meets the requirements as enunciated by Judge Guerra Gamble in her ruling from the bench with respect to what is required of the corporate representative. (*Id.*) (emphasis added).

Even ignoring the eleventh-hour disclosure – which itself is impermissible under the Rules – even Ms. Paz admits that Defendants waited two weeks before telling her to begin her preparations. Under these circumstances, and bearing the burden alone, Ms. Paz was guaranteed to be an ill-prepared and evasive witness.

## V.    The Court Should Grant the Remedies Requested by Plaintiffs in their Prior Motion.

During the prior sanctions hearing, this Court stated, "I am not going to designate facts as established until after this next deposition and then only if I have to, because I think it may come to that…" (Ex. 1, January 14 Hearing, p. 84). The Court also stayed the remaining discovery obligations of the Plaintiffs. Because Defendants failed to comply with the Court's instructions, Plaintiffs now ask the Court to enter those remedies under Rule 215, along with a substantial punitive money sanction that will finally catch the attention of these Defendants. As such, Plaintiffs have prepared an order 1) providing jury instructions for the topics in the order; 2) disallowing any further discovery from Defendants; and 3) ordering punitive sanctions.

## CONCLUSION

Because Defendants have ignored the Court's instructions and presented yet another unprepared representative, Plaintiffs pray the Court grant their Motion.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

**CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with opposing counsel about this Motion, and they are opposed.

_____
MARK D. BANKSTON

**CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2022, the forgoing document was served upon all counsel of record via electronic service.

_____
MARK D. BANKSTON

# D-1-GN-18-001835

| NEIL HESLIN | § | IN DISTRICT COURT OF |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 261st DISTRICT COURT |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

# D-1-GN-18-001842

| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 345th DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| and FREE SPEECH SYSTEMS, LLC | § | |

# D-1-GN-18-006623

| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC | § | 98th DISTRICT COURT |
| and FREE SPEECH SYSTEMS, LLC | § | |

## ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS
## REGARDING CORPORATE DEPOSTION

On this day, the Court considered Plaintiffs' Motion for Sanctions Regarding Corporate Deposition. For the reasons below, the Court finds that the Motion should be granted.

## BACKGROUND

Defendants' pattern egregious discovery abuse is well-detailed in the many prior orders of this Court,[1] but a brief history of Plaintiffs' attempts to take a corporate deposition is as follows:

On August 31, 2018, the Court ordered Defendants to appear for depositions in Mr. Heslin's defamation claim (D-1-GN-18-001835). Defendants refused to appear for the depositions or respond to written discovery. After Plaintiff filed a Motion for Sanctions, Defendants initiated an appeal.

On January 25, 2019, this Court ordered Defendants to respond to court-approved discovery requests and appear for depositions in Ms. Lewis' IIED case (D-1-GN-18-006623). Defendants presented Rob Dew as a corporate designee, who was unable to give any testimony. The Court chastised "the failure of the defendants to present an InfoWars corporate representative who has a clue about InfoWars as a corporation," noting that "it was a pretty meaningless deposition." Defendants agreed to stipulate to Plaintiff's petition

---

[1] In addition to discovery abuse in these cases, the Court has considered Defendants' consistent pattern of bad faith litigation tactics and discovery abuse in other cases and courts. First, as described in this Court's prior orders, InfoWars has also committed discovery abuse in *Fontaine v. InfoWars, LLC, et al.* (D-1-GN-18-1605), a defamation lawsuit relating to the Stoneman Douglass High School shooting. In that case, InfoWars failed to timely answer written discovery. After InfoWars provided untimely and evasive responses, Mr. Fontaine was forced to bring a motion to compel InfoWars' compliance, for which this Court awarded sanctions and attorney's fees on September 15, 2021. The Court also notes that Defendants have repeatedly violated discovery orders in *Lafferty v. Jones,* a similar lawsuit brought after the instant cases by a different set of Sandy Hook parents in the Superior Court of Connecticut, ultimately resulting in a default judgment on liability several weeks after this Court's entry of default judgment. The Court further notes that Defendants have been sanctioned by the Texas Court of Appeals for bringing a frivolous appeal in Mr. Heslin's case. Finally, as noted in the Court's default judgment order, Mr. Jones has publicly declared that he considers these lawsuits to be a "show trial," showing clear signs that Defendants' discovery violations are the result of bad faith. Mr. Jones' recent deposition confirmed these signs, during which Mr. Jones testified about his indifference to his discovery obligations.

for the purposes of the TCPA motion and voluntary pay $8,100 in attorney's fees to avoid sanctions at that time.

Following the events in *Lewis,* the premature appeal in Mr. Heslin's defamation case was dismissed for lack of jurisdiction. Upon remand to this Court in the fall of 2019, InfoWars again refused to respond or appear for deposition. On October 18, 2019, this Court assessed sanctions of $25,875, while also ruling that Plaintiff's burdens were taken as established for the purposes of the TCPA motion.

On October 18, 2019, this Court ordered Defendants to appear for deposition in Mr. Heslin's IIED case (D-1-GN-18-004651).[2] Again, Rob Dew was produced as the corporate designee. Again, Mr. Dew had not been prepared and was unable to offer any meaningful testimony. On December 20, 2019, the Court assessed sanctions totaling $100,000 and held the Defendants in contempt for intentionally disobeying the order. At that time, the Court held a default judgment under advisement based on representations by Defendants that discovery would be promptly supplemented during the appellate stay.

All the cases were remanded in June 2021. Defendants had not taken any steps to address the discovery situation during the appeal, and for the next three months following remand, Defendants ignored Plaintiffs' demands for compliance. On September 27, 2019, this Court issued a default judgment on liability and awarded attorney's fees of $45,925.

### THE DECEMBER 3, 2021 CORPORATE DEPOSITION

Following the default judgment, Plaintiffs again sought the Defendants' depositions to secure testimony relevant to the trial on compensatory and punitive damages. Defendants produced Daria Karpova for the deposition. The transcript of Ms. Karpova's deposition

---

[2] Subsequently consolidated with D-1-GN-18-001835.

shows that she was not prepared to discuss any of the eight topics for which she had been designated. Her testimony as a whole demonstrated profound disrespect for the discovery process. Ms. Karpova's lack of preparation was flagrant and egregious, especially given the repeated refusal to prepare a designee.

On January 14, 2022, the Court heard argument on Plaintiffs' Motion for Sanctions concerning Ms. Karpova's deposition. The Court granted the Motion, awarded costs, and ordered the Defendants to appear one more time. The Court provided detailed instructions for preparing the designee(s).

## THE FEBRUARY 2022 CORPORATE DEPOSITION

On February 14-15, 2022, Defendants presented Brittany Paz as the designee in both the Sandy Hook and Fontaine cases. A review of the deposition transcript shows that Defendants flagrantly disobeyed the Court's order in preparing Ms. Paz. As a result, she was unable to give adequate testimony on any of the topics. Indeed, it appears Ms. Paz was selected to provide a buffer and to obfuscate on InfoWars' behalf. Plaintiffs have now faced five non-appearances at corporate depositions on the issues at the heart of their claims despite every remedial action taken the Court, including the severe sanction of default and over $200,000 in cumulative attorney's fees.

## FINDINGS

. The Court finds that, once again, Defendants have intentionally thwarted the legitimate discovery process in these cases. There is no other way to interpret the refusal to prepare its designee(s) as anything but obstruction of the highest order. The egregiousness and repetitiveness of Defendants' obstruction exhibits a total disregard for and disrespect of the integrity of this Court and our judicial system. Plaintiffs' discovery of facts necessary to

4

properly present their claim for damages has been irreparably prejudiced in virtually all respects. Absent severe action from this Court, Defendants will ultimately profit from their sabotage of the discovery process.

The Court therefore ORDERS that:

1.      Pursuant to Rule 215(b)(1), the Court disallows any further discovery by Defendants. Any obligation of the Plaintiffs to respond to any pending discovery is terminated.

2.      Pursuant to Rule 215(b)(2), the Court orders that Defendants shall pay all of the expenses of discovery and taxable court costs in these lawsuits. Plaintiffs shall submit evidence setting forth any court costs or attorney's fees relating to discovery or discovery motions, excepting those costs or attorney's fees which were already awarded in any prior order of the Court.

3.      Pursuant to Rule 215(b)(3), the Court orders that designated facts shall be taken to be established for the purposes of the action. Specifically, the jury will be instructed that any factual dispute relating to the following topics shall be taken as established in favor the Plaintiffs:

- Sourcing and research for the videos described in Plaintiffs' petitions.
- Individuals involved in the production of the videos described in Plaintiffs' petitions.
- Internal editorial discussions regarding InfoWars' coverage of the Sandy Hook Elementary School shooting.
- The company's knowledge of the Plaintiffs.
- The audience reach of the videos described in Plaintiffs' petitions.
- The documents produced by the company in response to Plaintiffs' discovery requests.
- Efforts made by the company to preserve potential evidence.
- The company's business structure and relationship with other parties.

4.      The Court orders that Defendants shall pay additional punitive monetary sanctions in the amount of $1,000,000. The Court finds that there is a direct relationship between additional monetary sanctions and the egregiousness and repetitiveness of Defendants' obstruction. Defendants' pattern of discovery abuse is a truly exceptional case and exemplifies a course of misconduct which must be deterred lest future litigants pursue the same path. Given the outrageous nature of the misconduct, the total failure of prior sanctions, and the massive prejudice to Plaintiffs' claims, the Court finds that additional monetary sanctions are appropriate, just, and not excessive. Defendant shall pay this sanction within 30 days of this Order.

Dated _____, 2022.


_____
Hon. Maya Guerra Gamble