## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re | Bankruptcy |
| Alexander E. Jones, | Case No. 22-33553 (CML) |
| Debtor. | Chapter 11 |
| | |
| Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Estate of Marcel Fontaine, | |
| Plaintiffs, | Adv. Pro. No.: 23-03035 (CML) |
| v. | |
| Alexander E. Jones and Free Speech Systems, LLC, | |
| Defendants. | |

## MOVANTS' REPLY TO
## DEFENDANT'S OBJECTIONS AND RESPONSES TO
## <u>MOVANTS' STATEMENT OF UNCONTESTED MATERIAL FACTS</u>

Plaintiffs Neil Heslin, Scarlett Lewis, Leonard Pozner, and Veronique De La Rosa (together, the "**Movants**"), through their undersigned counsel, respectfully submit this reply to Defendant's Objections And Responses [Dkt. 33] to Movants' Statement Of Uncontested Material Facts [Dkt. 28] in Support of Movants' Motion for Summary Judgment [Dkt. 27] (the "**Motion**")[1].

For the convenience of the Court, Movants have set forth herein their statement of undisputed material facts, Jones's objections and responses (copied verbatim), and Movants' replies to those objections and responses.

Movants reserve their objections to Jones's use of a declaration [Dkt. 32] to rebut facts set forth in the Movants' Statement of Uncontested Material Facts.  The declaration is irrelevant as the facts set forth by the Movants were conclusively established in the underlying state court actions and Jones should be collaterally estopped from relitigating those findings.  However, even if the facts asserted in Jones's declaration are taken as true, the material facts set forth below in the Reply paragraphs are uncontested.

Attached Exhibit 1 responds to Jones's Objections to Movant's Summary Judgment Evidence.

1.      As described more fully in the Complaint, Movants' children were murdered on December 14, 2012 in their classrooms at Sandy Hook Elementary School.  *Heslin v. Jones (In re Alexander E. Jones)*, Adv. Proc. No. 23-03035 (CML), Complaint to Determine Dischargeability of Debt (Bankr. S.D. Tex. March 10, 2023) (the "**Complaint**"); *see also* Declaration of Stuart R. Lombardi, filed concurrently herewith (the "**Lombardi Decl.**"), Ex. 4 (Pozner/De La Rosa Amended Petition); Lombardi Decl., Ex. 8 (Heslin/Lewis Amended Petition).   After Jones

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

repeatedly told his millions of followers that Movants were lying, their children were actors, and the shooting was a hoax, Movants sued him in Texas state court and won.  The following summarizes the facts as found and established by the state court[2] when it rendered judgments against Jones in those actions.

> **JONES'S RESPONSE**:  It is undisputed that children were murdered on December 14, 2012, at Sandy Hook Elementary School.  It is further undisputed that Movants sued Defendant in Texas state court, that a default judgment was entered against Defendant on liability, and that a jury entered a verdict against him for money damages.  Movants' characterization of Defendant's discussion of the Sandy Hook Shooting is disputed.  Movants have attached videos of Defendant discussing the Sandy Hook Shooting to their Motion, and those videos speak for themselves.  Defendant will provide a discussion of those videos in his response to the Statements below.

> **MOVANTS' REPLY**:  There is no dispute that the videos speak for themselves, nor is there any dispute that Jones made the statements recorded in the videos.  Those videos show that Jones told viewers, among other things, that "Sandy Hook is a synthetic, completely fake with actors … manufactured [event]" and the shooting "is a giant hoax."  Lombardi Decl., Ex. 19 (Heslin/Lewis Pl. Video Ex. 13); Lombardi Decl., Ex. 17 (Heslin/Lewis Pl. Video Ex. 12).

2.      Starting from the day of the Sandy Hook massacre, Jones claimed that the Sandy Hook school shooting was a hoax.  The state-court records establish that Jones lied about the shooting on at least the following occasions:

> **JONES'S RESPONSE**:  Defendant disputes that he claimed that the Sandy Hook school shooting was undoubtedly a hoax on the day it happened.  The video attached by Movants speaks for itself. (*See* Doc. 29-9).  The video shows Defendant warning that the government was capable of staging a mass shooting, but he never stated one way or the other whether he believed the shooting was fake.  Defendant further disputes that the state court records establish that Defendant lied about the shooting.  Defendant never said something on air that he did not believe to be true.  Jones Decl. at ¶ 17, attached to Defendant's Objection and Response to Movants' Motion for Summary Judgment as Exhibit 1.

> **MOVANTS' REPLY**:  There is no dispute that the video speaks for itself, nor is there any dispute that Jones made the statements recorded in the video.  Lombardi

---

[2] Judge Maya Guerra Gamble of the 459th District Court of Travis County, Texas presided over both the Pozner/De La Rosa and the Heslin/Lewis Actions.

Decl., <u>Ex. 9</u> (Heslin/Lewis Pl. Video Ex. 1). The video was recorded—and thus Jones's statements were made—on the day of the Sandy Hook school shooting. Jones admits that on that day, he stated on-air that the shooting "may be staged" and "it would not surprise me if the government staged this event to restrict Americans' access to guns." Lombardi Decl., <u>Ex. 9</u> (Heslin/Lewis Pl. Video Ex. 1).

3.     On the afternoon of the shooting, Jones broadcast "Connecticut School Massacre Looks Like False Flag Says Witnesses." *See* Lombardi Decl., <u>Ex. 9</u> (Heslin/Lewis Pl. Video Ex. 1). In the next month, Jones alleged that Ms. De La Rosa faked an interview with Anderson Cooper, and cited this lie as a key piece of evidence in his claim that Sandy Hook was staged as part of a criminal plot. Lombardi Decl., <u>Ex. 10</u> (Pozner Affidavit) ¶ 7. On December 17, Jones broadcast a segment titled "Creepy Illuminati Message in Batman Movie Hints at Sandy Hook School." Lombardi Decl., <u>Ex. 11</u> (July 27, 2022 Heslin/Lewis Trial Tr. ) 6:11-18. On December 19th, Jones broadcast "Sandy Hook Second Shooter Cover-Up." *Id.* at 6:19-23. On December 21, in an episode titled "Lower Part of Gotham Renamed 'Sandy Hook' in Dark Knight Film," Jones again claimed that the latest Batman movie revealed that the shooting was a hoax. *Id*. at 6:24-7:3.

**JONES'S RESPONSE**: See paragraph 5 below.

**MOVANTS' REPLY**: See paragraph 5 below.

4.     As time passed, the lies continued. On January 10, 2013, Jones broadcast "Professor Claims Sandy Hook Massacre MSM Misinformation." *Id*. at 7:4-8. Five days later, Jones (through FSS/InfoWars) ran "Sandy Hook AR-15 Hoax? Still No School Surveillance Footage." *Id*. at 7:9-13.

**JONES'S RESPONSE**: See paragraph 5 below.

**MOVANTS' REPLY**: See paragraph 5 below.

5.     In a January 27, 2013 episode titled "Why People Think Sandy Hook is a Hoax," Jones told his audience, "[i]n the last month and a half, I have not come out and said this was a

clearly staged event.  Unfortunately, evidence is beginning to come out that points more and more

in that direction."  Lombardi Decl., <u>Ex. 12</u> (Heslin/Lewis Pl. Video Ex. 5).  The "evidence" cited

by Jones was his own claim that Plaintiff Veronique De La Rosa's interview with Anderson

Cooper was faked on a blue-screen.  That was false, but it became a central pillar of Jones's Sandy

Hook conspiracy theory.

> **JONES'S RESPONSE**:  It is undisputed that Defendant broadcast the videos
> mentioned in Statements 3-5 on the dates listed.  It is further undisputed that
> Defendant said the quote attributed to him in Statement 5.  Defendant disputes the
> remaining statements in Statements 3-5.  In regard to Movant De La Rosa's
> interview with Anderson Cooper, Doc. 29-12 speaks for itself.  In that video,
> Defendant was confused by the interview because it appeared that Anderson
> Cooper was standing in front of a blue screen when talking to Movant De La Rosa.
> Any insinuation that Defendant was lying in any of the referenced broadcasts is
> also disputed.  Defendant never said something on air that he did not believe to be
> true.  Jones Decl. at ¶ 17.
>
> Finally, Defendant objects to the use of Doc. 29-10.  It is an Affidavit from
> Leonard Pozner from the state-court action.  It is unclear for what purpose the
> affidavit was used.  In his Response in Opposition to Movants' Motion for
> Summary Judgment, Defendant argues that the Court should not take all the
> allegations in the Movants' state-court petitions as true.  But even if the Court
> disagrees with that contention, it certainly should not take as true an affidavit from
> the prior proceeding with no indication of where it came from or what it was
> attached to.

> **MOVANTS' REPLY**:  There is no dispute that Jones broadcast the videos
> mentioned in Statements 3-5 on the listed dates, nor is there any dispute that the
> videos speak for themselves.  It is thus undisputed that Jones stated, among other
> things, that the background behind Anderson Cooper and Movant De La Rosa was
> "clearly a blue screen" and that he "knows blue screen when I see it."  Lombardi
> Decl., <u>Ex. 12</u> (Heslin/Lewis Pl. Video Ex. 5).
>
> With respect to Doc. 29-10, Jones provides no legal support for his
> objection.  Nor could he.  FRCP 56(c)(1)(a) provides that a party may support its
> factual assertions by "citing to particular parts of materials in the record, including
> . . . affidavits or declarations."  Jones admits that Doc. 29-10 is an Affidavit from
> Leonard Pozner from the state court action.

6.     The state-court records established that Mr. Pozner, an occasional listener of

Jones's show, heard the broadcast and emailed Jones to set the record straight.

Alex,

> I am very disappointed to see how many people are directing more anger at families that lost their children in Newtown. Accusing us of being actors . . . . Haven't we had our share of pain and suffering? All these accusations of government involvement, false flag terror, new world order etc. I used to enjoy listening to your shows prior to 12-14-12. Now I feel that your type of show created these hateful people and they need to be reeled in!

Lombardi Decl., Ex. 13 (Heslin/Lewis Pl. Ex. 48) (ellipsis in original). InfoWars' Chief Editor Paul Watson replied by assuring Mr. Pozner that Jones and InfoWars knew Sandy Hook was "a very real tragedy with very real victims" and that they had "not promoted the 'actors' thing." *Id.*

> **JONES'S RESPONSE**: It is undisputed that Movant Leonard Pozner sent an email to writers@infowars.com. The content of the email speaks for itself. It is further undisputed that Paul Watson replied to Movant Pozner, and the content of his email similarly speaks for itself. The emails are immaterial to whether Movants are entitled to judgment as a matter of law.

> **MOVANTS' REPLY**: The fact and contents of both Mr. Pozner's email and InfoWars Chief Editor Paul Watson's reply are undisputed.

7.      But on air, Jones told a much different story. On March 27, 2013, he aired an episode titled "Sandy Hook was a Total False Flag!" Lombardi Decl., Ex. 11 (July 27, 2022 Heslin/Lewis Trial Tr.) 8:18-9:3. Days later, another episode followed: "Crisis Actors Used at Sandy Hook! Special Report." *Id.* at 10:6-9.

> **JONES'S RESPONSE**: See paragraph 8 below.

> **MOVANTS' REPLY**: See paragraph 8 below.

8.      2014 brought more lies. On March 14, 2014, in an episode titled "Sandy Hook, False Narratives vs. The Reality," Jones claimed that the United Way was part of the plot, and told his audience, "undoubtedly, there's a cover-up, there's actors, they're manipulating, they've been caught lying, and they were pre-planning before it and rolled out with it." *See* Lombardi Decl., Ex. 14 (Heslin/Lewis Pl. Video Ex. 8). On May 9, 2014, "Revealed: Sandy Hook Truth Exposed" aired. Lombardi Decl., Ex. 11 (July 27, 2022 Heslin/Lewis Trial Tr.) 23:7-11. On May 13, 2014,

"Sandy Hook Massacre was a DHS Illusion Says School Safety Expert." *Id*. at 24:21-25:3.  Jones

continued to publish articles throughout 2014 alleging the shooting was staged.  *See generally id*.

at 23:7-43:9 (detailing at least seven separate InfoWars broadcasts or articles lying about the Sandy

Hook shooting from May to December 2014).  On September 25, 2014, in an episode titled "Sandy

Hook Deaths Missing from FBI Report," Jones did mock imitations of crying parents and stated,

"there are photos of kids who are still alive they said died."  Lombardi Decl., Ex. 15 (Heslin/Lewis

Pl. Video Ex. 10).  That same day, the Debtors published their third most popular story ever, "FBI

Says Nobody Killed at Sandy Hook."  Lombardi Decl., Ex. 11 (July 27, 2022 Heslin/Lewis Trial

Tr.) 31:1-33:15.

> **JONES'S RESPONSE**:  It is undisputed that Defendant broadcasted the videos
> mentioned in Statements 7-8 on the dates listed.  It is further undisputed that the
> videos referenced speak for themselves.  Any insinuation that Defendant was lying
> in any of the referenced broadcasts is disputed.  Defendant never said something on
> air that he did not believe to be true.  Jones Decl. at ¶ 17.  Any insinuation that Paul
> Watson speaks for Defendant is also disputed.  Defendant further disputes that he
> published any articles referenced in Statements 7-8.  Over 99% of the content on
> the InfoWars website is not written by Defendant.  He writes certain headlines and
> comments that are specifically attributed to him.  He rarely edits or posts videos
> to InfoWars' website—less than 20 per year.  His position at InfoWars is not as an
> editor and he does not maintain control of the editorial systems at FSS. *Id.* at ¶ 5.

> **MOVANTS' REPLY**:  There is no dispute that Jones broadcast the videos
> mentioned in Statements 7-8 on the listed dates, nor is there any dispute that those
> videos speak for themselves.  Movant Pozner contacted Jones and others at
> InfoWars (including Paul Watson) informing them that their statements were untrue
> in January 2013.  Jones's Response at ¶ 6; Lombardi Decl., Ex. 13 (Heslin/Lewis
> Pl. Ex. 48).  Movant Pozner was informed by InfoWars Chief Editor Paul Watson
> that Mr. Jones knew that the Sandy Hook shooting was real.  *Id*.  InfoWars, which
> is owned and controlled by Jones, continued to publish articles stating otherwise.
> Jones Decl. at ¶ 2-3.

9.     In early December 2014, after Jones continued broadcasting his lies, Mr. Pozner

began making complaints to YouTube.  On December 9, 2014, YouTube removed an InfoWars

video.  Lombardi Decl., Ex. 16 (Heslin/Lewis Pl. Ex. 56).  InfoWars published an article that day

naming Mr. Pozner and his business, comparing the removal of the video "to actions taken in the *1984* world envisioned by George Orwell" and commenting that "[t]his guy's company would come in handy to any Sandy Hook hoax perpetrators. . . ." *Id.*

> **JONES'S RESPONSE**: It is undisputed that Movant Pozner made complaints to YouTube about Defendant's broadcasts. *Id.* Defendant disputes that he published the article referenced. It is further disputed that Defendant was lying in any of the referenced broadcasts. Defendant never said something on air that he did not believe to be true. *Id.*

> **MOVANTS' REPLY**: It is undisputed that in January 2013, Movant Pozner contacted Jones and others at InfoWars highlighting that their statements were untrue. Jones's Response at ¶ 6; Lombardi Decl., Ex. 13 (Heslin/Lewis Pl. Ex. 48). Further, it is not disputed that InfoWars published the article naming Movant Pozner and his business. Jones owns and controls InfoWars. Jones Decl. at ¶ 2-3. Jones's self-serving claim that he "never said something on air that he did not believe to be true" is contradicted by the undisputed facts but ultimately irrelevant.

10.   Jones continued to broadcast his Sandy Hook conspiracy theory. On December 28, 2014, he told his InfoWars audience, "the whole thing is a giant hoax. How do you deal with a total hoax? It took me about a year, with Sandy Hook, to come to grips with the fact that the whole thing was fake." Lombardi Decl., Ex. 17 (Heslin/Lewis Pl. Video Ex. 12).

> **JONES'S RESPONSE**: It is undisputed that Defendant said the quote attributed to him in Statement 10. Any insinuation that Defendant was lying in the referenced broadcast is disputed. Defendant never said something on air that he did not believe to be true. *Id.*

> **MOVANTS' REPLY**: Jones admits that he made the quoted statement on December 28, 2014. Jones also admits that in 2013, Movant Pozner informed the writers at InfoWars that their statements regarding the Sandy Hook school shooting were untrue. Jones's Response at ¶ 6; Lombardi Decl., Ex. 13 (Heslin/Lewis Pl. Ex. 48).

11.   On January 2, 2015, Jones (through FSS/InfoWars) published an article about Mr. Pozner's and Ms. De La Rosa's late son, Noah, titled "Sandy Hook Victim Dies (Again) in Pakistan." Lombardi Decl., Ex. 18 (Heslin/Lewis Pl. Ex. 59). The next week, he targeted Noah again, telling his audience that "Sandy Hook is a synthetic, completely fake with actors, in my

view, manufactured [event].  I couldn't believe it at first. I knew they had actors there, clearly, but I thought they killed some real kids.  And it just shows how bold they are that they clearly used actors. I mean, they even ended up using photos of kids killed in mass shootings here in a fake mass shooting in…Pakistan."  Lombardi Decl., Ex. 19 (Heslin/Lewis Pl. Video Ex. 13).

> **JONES'S RESPONSE**:  It is undisputed that Defendant broadcast the videos mentioned in Statement 11 on the dates listed.  It is further undisputed that Defendant said the quote attributed to him in Statement 11.  The videos speak for themselves.  Defendant disputes that he attacked Noah Pozner in the referenced broadcast.  Any insinuation that Defendant was lying in the referenced broadcasts is disputed.  Defendant never said something on air that he did not believe to be true.  *Id.*

> **MOVANTS' REPLY**:  There is no dispute that Jones broadcast the videos on the listed dates, nor is there any dispute that the videos speak for themselves.  Jones admits to stating that "they even ended up using photos of kids killed in mass shootings here in a fake mass shooting in . . . Pakistan."  Lombardi Decl., Ex. 19 (Heslin/Lewis Pl. Video Ex. 13).  Jones offers no evidence to contradict the fact that his statement referred to Noah Pozner and thus raises no genuine dispute.

12.    Mr. Pozner again complained to YouTube.  Jones then spent nearly an hour of his February 12, 2015 show to attacking Mr. Pozner directly, telling his audience that Mr. Pozner was "going after the Second Amendment."  Lombardi Decl., Ex. 20 (Heslin/Lewis Pl. Video Ex. 14); Lombardi Decl., Ex. 10 (Pozner Affidavit).  During the episode, Jones broadcast Mr. Pozner's personal information and maps to addresses tied to Mr. Pozner's family, and promised he would personally visit Florida to investigate Mr. Pozner.  Lombardi Decl., *Id.* ¶ 9.

> **JONES'S RESPONSE**:  It is undisputed that Defendant broadcast the videos mentioned in Statement 12 on the dates listed.  It is further undisputed that Defendant said the quote attributed to him in Statement 12.  Defendant disputes that broadcast Mr. Pozner's personal information.  The video speaks for itself.  Moreover, Defendant renews his objection to the Pozner Affidavit from Statement 6.

> **MOVANTS' REPLY**:  Jones cites no evidence to support his denial that he broadcast Mr. Pozner's personal information, and thus raises no genuine dispute.  In fact, Jones admits that he broadcast the cited video and thus made the quoted statement.  Accordingly, both the fact and content of the video are undisputed.  It

is thus admitted that Jones showed the audience Movant Pozner's name, email, and Google Maps images of his address.  Lombardi Decl., <u>Ex. 20</u> (Heslin/Lewis Pl. Video Ex. 14); Lombardi Decl., <u>Ex. 10</u> (Pozner Affidavit).

13.     Soon after, an InfoWars viewer began stalking Mr. Pozner and leaving death threats on his voicemail and email, telling him "you gonna die, death is coming to you real soon" and "LOOK BEHIND YOU IT IS DEATH."  Lombardi Decl., <u>Ex. 4</u> (Pozner/De La Rosa Amended Petition) ¶ 48.  That viewer was eventually apprehended by the FBI and sentenced to federal prison.  As a condition of her sentence, she was barred from accessing InfoWars content upon her release.  *Id.*; Lombardi Decl., <u>Ex. 10</u> (Pozner Affidavit) ¶ 15.

> **JONES'S RESPONSE**:  The documents referenced in Statement 13 speak for themselves.  Defendant disputes that his broadcasts played a role in the harassment of Movants.  To the extent Statement #13 relies on the Pozner Affidavit (Doc. 29-10), Defendant objects to its use.

> **MOVANTS' REPLY**:  Jones does not cite any evidence to dispute the fact that his broadcasts played a role in the InfoWars viewer's harassment of Movants, which is evident from the undisputed facts, including the undisputed terms of the viewer's sentence.

14.     In June 2015, Jones dispatched one of his reporters, Dan Bidondi, to Newtown, Connecticut, where—on camera—Mr. Bidondi told local residents and town officials that they were "going to jail" for their lies, called them "scumbags," and yelled to passersby that "Sandy Hook was an inside job."  Lombardi Decl., <u>Ex. 21</u> (Heslin/Lewis Pl. Video Ex. 27); Lombardi Decl., <u>Ex. 22</u> (Heslin/Lewis Pl. Video Ex. 28).

> **JONES'S RESPONSE**:  It is undisputed InfoWars reporters went to Sandy Hook in June 2015.  It is further undisputed that the video referenced speaks for itself.  Defendant disputes that such reporters speak for him.

> **MOVANTS' REPLY**:  Jones does not dispute what InfoWars reporters said or did.  Jones is the "100% owner of FSS."  Jones Decl., at ¶ 3.

15.    On November 18, 2016, Jones told his InfoWars audience, "[t]he official story of Sandy Hook has more holes in it than Swiss cheese. . . .  If children were lost at Sandy Hook, my heart goes out to each and every one of those parents.  And the people who say they're parents that I see on the news.  The only problem is, I've watched a lot of soap operas.  And I've seen actors before.  And I know when I'm watching a movie and when I'm watching something real." Lombardi Decl., <u>Ex. 23</u> (Heslin/Lewis Pl. Video Ex. 18).

> **JONES'S RESPONSE**:  It is undisputed that Defendant said the quote attributed to him in Statement 15.  The video speaks for itself.  Any insinuation that Defendant was lying in the referenced broadcast is disputed.  Defendant never said something on air that he did not believe to be true.  Jones Decl. at ¶ 17.

> **MOVANTS' REPLY**:  There is no dispute that Jones made the referenced statement on November 18, 2016.  Jones has admitted that by July 2015, he "no longer believed that the victims of the Sandy Hook shooting were fake or that their relatives were actors."  Jones Decl. at ¶ 14.  Jones's self-serving claim that he "never said something on air that he did not believe to be true" is contradicted by the undisputed facts but ultimately irrelevant.

16.    On April 22, 2017, in the episode "Sandy Hook Vampires Exposed," Jones again accused Ms. De La Rosa of conducting a fake interview with Anderson Cooper, warning his viewers not to "believe any of it."  Lombardi Decl., <u>Ex. 24</u> (Heslin/Lewis Pl. Video Ex. 20); Lombardi Decl., <u>Ex. 10</u> (Pozner Affidavit) ¶ 13.

> **JONES'S RESPONSE**:  The video referenced in Statement 16 does not list the date of broadcast.  Thus, Defendant disputes the date listed in Statement 16. Defendant also disputes that he told his audience in this video not to believe anything about the Sandy Hook Shooting.  In context, he was pontificating on government secrecy, and he asked a rhetorical question:

>> If these are known liars that lied about WMDs, and lied to get us into all these wars and backed the Arab Spring in Libya, and Syria and Egypt and everywhere else to overthrow governments and put radical Islamists- if they'd do that, and have blood on their hands, and lied about the Iraq War, and were for the sanctions that killed a half million kids, and let the Islamists attack Serbia, and lied about Serbia launching the attack, when it all came out that Serbia didn't do it, how could you *believe any of it*.

(Doc. 29-24, 30:15- 30:44 (emphasis added)).

To the extent Statement 13 relies on the Pozner Affidavit (Doc. 29-10). Defendant objects to its use in accordance with his objection above.

**MOVANTS' REPLY**: The contents of the cited video are not disputed. Approximately one minute prior to making the statement quoted above, with respect to Anderson Cooper's interview with Movant De La Rosa, Jones claimed that when Anderson Cooper "turns, his nose disappears repeatedly because the green screen isn't set right." Lombardi Decl., Ex. 24 (Heslin/Lewis Pl. Video Ex. 20), 29:52-30:00. It is also undisputed that an image from Anderson Cooper and Movant De La Rosa's interview continued to appear on the screen as Jones began to make the statement quoted above. *Id.* at 30:13-29. Thus, there is no dispute about what Jones said and showed in the cited video.

17.     After about two months, Mr. Heslin appeared on *Sunday Night with Megyn Kelly*, where he described holding his dead son with a bullet hole in his head and the harm Jones's lies caused to him and his family. *See* Lombardi Decl., Ex. 25 (Heslin/Lewis Pl. Video Ex. 22). Eight days later, on June 26, 2017, Jones ran an InfoWars feature claiming, "[t]he statement [Heslin] made, fact-checkers on this have said cannot be accurate. He's claiming that he held his son and saw the bullet hole in his head. That is his claim. Now, according to a timeline of events and a coroner's testimony, that is not possible." Lombardi Decl., Ex. 26 (Heslin/Lewis Pl. Video Ex. 23). Then on July 20, 2017, Jones (through FSS/InfoWars) rebroadcasted the June 26th feature in full, with Jones commenting, "[t]he stuff I found was they never let them see their bodies." Lombardi Decl., Ex. 27 (Heslin/Lewis Pl. Ex. 100).

**JONES'S RESPONSE**: It is undisputed that the Megyn Kelly episode referenced in Statement 17 speaks for itself. The quotes referenced from Doc. 29-26 are not from Defendant. A different individual is broadcasting in the video labeled Exhibit 26. It is undisputed that Defendant said the quote attributed to him from Exhibit 27, (Doc. 29-27). In the full interview, Defendant states that he is sure it is all real but mentions that, in his opinion, there were anomalies in the evidence. Any insinuation that Defendant was lying in the referenced broadcast is disputed. Defendant never said something on air that he did not believe to be true. Jones Decl. at ¶ 17.

**MOVANTS' REPLY**:  There is no dispute that the Megyn Kelly episode speaks for itself.  The contents of the cited video and the fact that InfoWars broadcast the segment are not disputed.  InfoWars is fully owned by Jones.  Jones Decl. at ¶ 2-3.

There is no dispute that Jones said "[t]he stuff I found was they never let them see their bodies."  Lombardi Decl., Ex. 27 (Heslin/Lewis Pl. Ex. 100).  It is also not disputed that the full interview in context speaks for itself.

18.     Jones continued his lies that year, telling his audience on October 26, 2017 that Ms. De La Rosa's interview was part of the "fake newscasts, with blue screens" and that the shooting was "phony as a three-dollar bill."  Lombardi Decl., Ex. 28 (Heslin/Lewis Pl. Video Ex. 24).

**JONES'S RESPONSE**:  It is undisputed that Defendant said the quotes attributed to him in Statement 18.  In context, the video referenced in Statement 18 show that Defendant is referring to his perceived anomalies surrounding the shooting, not that the shooting never occurred.  Defendant disputes that he lied in the referenced broadcast.  Defendant never said something on air that he did not believe to be true. *Id.*

**MOVANTS' REPLY**:  There is no dispute that Jones made the quoted statements on October 26, 2017.  Jones has admitted that by July 2015, he "no longer believed that the victims of the Sandy Hook shooting were fake or that their relatives were actors."  Jones Decl. at ¶ 14.  Jones's statement that he "never said something on air that he did not believe to be true" is contradicted by the undisputed facts but ultimately irrelevant.

19.     The Heslin/Lewis trial showed that Jones's false narrative has become so widespread that in 2016, one out of every four Americans—more than 75 million people— believed Movants were either possibly or definitely lying about the death of their children. Lombardi Decl., Ex. 29 (Aug. 1, 2022 Heslin/Lewis Trial Tr. Vol. 5) 37:1-11.  Because of Jones, tens of millions of people believe that Movants are "actors with criminal intent, that this didn't happen, that they're trying to take people's guns away."  *Id.* at 47:13-17.

**JONES'S RESPONSE**:  It is undisputed that the trial transcript referenced in Statement 19 speaks for itself.  It is disputed that Defendant is the sole reason that millions of Americans believe that the Sandy Hook Shooting never happened.  Any insinuation that Defendant lied about Sandy Hook is disputed.  Defendant never said something on air that he did not believe to be true.

**MOVANTS' REPLY**:  There is no dispute that the trial transcript speaks for itself. Jones's denials and assertions are immaterial.

20.    Jones has known that Sandy Hook was real from the start.  In January 2013, only a month after the shooting, InfoWars' Chief Editor, Paul Watson, assured Mr. Pozner that Jones knew that Sandy Hook was "a very real tragedy with very real victims."  Lombardi Decl., Ex. 13 (Heslin/Lewis Pl. Ex. 48).

**JONES'S RESPONSE**:  Disputed.  Jones Decl. at ¶¶ 11-17.  The person quoted in Statement 20 is not Defendant and does not speak for him.

**MOVANTS' REPLY**:  There is no dispute that Mr. Watson's email speaks for itself, including Watson's assertion that Jones knew that Sandy Hook was "a very real tragedy with very real victims."  Jones's Response at ¶ 6.  There is also no dispute that Paul Watson was Chief Editor at InfoWars, which is wholly owned by Jones.  Jones Decl. at ¶ 2-3.

21.    Even by Jones's own account, by July 2015, he "realized [the Sandy Hook shooting] probably did happen" and "there was a good chance I was wrong" about the conspiracy theory he broadcasted to millions.  Lombardi Decl., Ex. 30 (Aug. 3, 2022 Heslin/Lewis Trial Tr.) 17:23-18:9.  Around that time, Chief Editor Watson urged Jones to stop lying about Sandy Hook.  On December 17, 2015, he texted: "This Sandy Hook stuff is killing us.  It's promoted by the most batshit crazy people like Rense and Fetzer who all hate us anyway.  Plus it makes us look really bad to align with people who harass the parents of dead kids.  It's gonna hurt us with Drudge and bringing bigger names into the show."  Lombardi Decl., Ex. 30 (Heslin/Lewis Pl. Ex. 73).

**JONES'S RESPONSE**:  It is undisputed that Defendant realized that the Sandy Hook shooting probably did happen in July 2015.  Jones Decl. at ¶ 14.  It is undisputed that Mr. Watson emailed Defendant on December 17, 2015, which included the quoted language in Statement 21.  Defendant disputes that this email in any way shows that he was lying about Sandy Hook.  The video also contradicts Statement 22, which claims that Sandy Hook was good for business.  According to Mr. Watson's email, Sandy Hook was bad for business, but Defendant kept discussing it because he truly believed what he was saying.  *Id.* at ¶ 17.

**MOVANTS' REPLY**:  There is no dispute that by July 2015, Jones "no longer believed that the victims of the Sandy Hook shooting were fake or that their relatives were actors."  Jones Decl. at ¶ 14.  There is no dispute that Watson sent the referenced email to Jones on the listed date and that the content of the email speaks for itself.

22.     But Jones did not stop because his lies about Sandy Hook were good for business. While Jones is best known for his broadcasts, his primary business is selling dietary supplements through FSS—and he uses his broadcasts to drive those sales.  The "vast majority of FSS revenues comes from the sale of Supplements." *In re Free Speech Systems, LLC*, Case No. 22-60043 (CML) (Bankr. S.D. Tex. 2022), *Declaration of W. Marc Schwartz In Support of Voluntary Petition and First Day Motion*s ¶ 29 [Dkt. No. 10].  FSS is a "single talent business" with "a unique audience that is highly loyal to Alex Jones and purchases products based on Alex Jones's credibility. . . . Historically, approximately 80% of FSS' revenue is derived from product sales[.]" *Id*. at ¶¶ 25, 31.  Questioning mass shootings and other terrorist attacks has become a favored way for Jones to draw viewers and boost sales.  Indeed, Jones testified at trial about a wide variety of mass shootings and bombings, admitting that he told his audience they were all "false flags." *See* Lombardi Decl., Ex. 1 *(*Aug. 3, 2022 Heslin/Lewis Trial Tr. Vol.) 7, 55-60 (detailing Jones's claims that nearly all mass shootings and terrorist attacks in the last 15 years were false flags, including those at the Boston Marathon, Sutherland Springs Church, Oklahoma City, Parkland, and Las Vegas).  In December 2014, in the same video in which Jones broadcast Mr. Pozner's name and maps to his mailing address, Jones boasted that, conservatively, he reached 20 million viewers a week. Lombardi Decl., Ex. 20, (Heslin/Lewis Pl. Video Ex. 14).

**JONES'S RESPONSE**:  Defendant disputes that Sandy Hook was good for business.  Movants do not cite to any evidence that supports that contention.  It is undisputed that the quotes from the Declaration of Marc Schwartz speak for themselves.  It is undisputed that Defendant is extremely skeptical of the government and the official narrative from the mainstream media.  Accordingly, Sandy Hook is not the only mass shooting or terrorist attack that he believed to be

a false flag.  As with Sandy Hook, Defendant truly believes what he says.  *Id.* at ¶ 17.

> **MOVANTS' REPLY**:  It is undisputed that, in the same video in which he broadcast information about Movant Pozner, Jones stated that he conservatively reached an estimated 20 million viewers a week.  Jones's Response at ¶ 12; Lombardi Decl., Ex. 20, (Heslin/Lewis Pl. Video Ex. 14).  There is likewise no dispute that the Declaration of Marc Schwartz speaks for itself.
>
> There is also no dispute that Jones told his viewers that the Sandy Hook shooting was a "false flag."

23.     To his audience, Jones portrayed his Sandy Hook "reporting" as real.  But the state-court cases revealed that InfoWars' own managers and editors knew it was a lie.  Evidence at the Heslin/Lewis trial showed that FSS staff and Jones's family joked about the absurdity of his claims.  On November 18, 2016, the same day Jones told his InfoWars audience, "[t]he official story of Sandy Hook has more holes in it than Swiss cheese" and insinuated the parents were akin to "actors" on a "soap opera,"  Lombardi Decl., Ex. 23 (Heslin/Lewis Pl. Video Ex. 18), Jones's cousin and InfoWars manager Buckley Hamman joked to Mr. Watson, "Surely it's a conspiracy theory that they are trying to suppress our popularity so that lizard people can return to the ascension pad at Sandy Hook and feast on Sacrificed crisis actors! lol."  Lombardi Decl., Ex. 31 (Heslin/Lewis Pl. Ex. 77).

> **JONES'S RESPONSE**:  Defendant disputes that any of the individuals referenced in Statement 23 speak for him or share his views.  Defendant does not require the people who work for him to agree with everything he says.  The email from Buckley Hamman speaks for itself.  Having said that, it is unclear what Mr. Hamman is trying to say in that email.  The quoted language attributed to Defendant from the referenced broadcast in Statement 23 is undisputed.  In context, the video referenced in Statement 18 show that Defendant is referring to his perceived anomalies surrounding the shooting, not that the shooting never occurred.  Defendant disputes that he lied in the referenced broadcast. Defendant never said something on air that he did not believe to be true.  *Id.* at ¶ 17.

> **MOVANTS' REPLY**:  There is no dispute that the email from Buckley Hamman speaks for itself, nor that Buckley Hamman was a manager at InfoWars when he made the statement attributed to him.  InfoWars is owned and controlled by Jones. Jones Decl. at ¶ 2-3.

There is no dispute that Jones made the statements attributed to him on November 18, 2016.  It is also undisputed that by July 2015, he "no longer believed that the victims of the Sandy Hook shooting were fake or that their relatives were actors."  Jones Decl. at ¶ 14.  Defendant's statement that he "never said something on air that he did not believe to be true" is false and irrelevant.

24.    But this was no joke to Movants.  According to trial testimony, Mr. Heslin "was shot at, his house was shot at, his car was shot at.  There were bullet casings found in his driveway. There are many people who clearly think very intensely, have very intense negative feelings about him and are willing to act on it."  Lombardi Decl., Ex. 29 (Aug. 1, 2022 Heslin/Lewis Trial Tr. Vol. 5) 48:4-9.  Roy Lubit, an expert in psychiatry, testified that because of Jones's conduct, Mr. Heslin and Ms. Lewis have "very high levels of anxiety" and that "[p]robably more in a nonclinical write-up it would say they're terrified."  *Id.* at 38:23-39:4.  He further testified that, as a result, they have "pulled away from people tremendously" (*Id*. at 40:1-2), "withdrawn from historic friends" (*Id*. at 40:2-3), and even "withdrawn from society to an extent."  *Id*. at 39:24-40:1.  Ms. Lewis sleeps with a gun, a knife, and pepper spray by her bed because she is terrified of being attacked.  *Id*. at 55:1-3.  Even in extreme heat, she refuses to turn her air conditioner on because she fears the sound may obstruct her ability to hear and evade an assailant.  *Id*. at 55:3-6.  Mr. Pozner has been subjected to harassment and threats from Jones's audience for years.  Lombardi Decl., Ex. 10 (Pozner Affidavit) ¶ 15.  He and his family were forced to move seven times.  *Id.* ¶ 10.  They have also been forced to take extreme steps to protect their privacy, such as maintaining post office boxes in multiple cities to confuse conspiracy fanatics and placing utility accounts in other names.  *Id.*  Even with these steps, conspiracy fanatics still routinely exchange Mr. Pozner's and Ms. De La Rosa's latest personal information and post those details online.  *Id.*

**JONES'S RESPONSE**:  It is undisputed that the trial testimony speaks for itself. Defendant disputes that any of the harassment Movants received is attributable to Defendant.  Movants do not cite any evidence of Defendant directing anyone to harass Movants- because there is none.

**MOVANTS' REPLY**:  There is no dispute that the trial testimony speaks for itself.  It is also undisputed that Jones broadcast the email address of Movant Pozner and locations associated with his family and that Jones stated that he planned on investigating those locations.  Jones's Response at ¶ 12; Lombardi Decl., <u>Ex. 20</u> (Heslin/Lewis Pl. Video Ex. 14); Lombardi Decl., <u>Ex. 10</u> (Pozner Affidavit).

25.     In 2018, Movants and more than a dozen of Jones's other victims sued Jones and FSS in state court.

**JONES'S RESPONSE**:  It is undisputed that Movants and other individuals sued Defendant in 2018.

**MOVANTS' REPLY**:  The statement is undisputed.

i.   *The Heslin/Lewis Action*[3]

26.     On April 16, 2018, Mr. Heslin sued Jones, FSS, and related defendants.  On July 13, 2018, the defendants moved to dismiss under the Texas Citizens Participation Act ("**TCPA**").  The state court entered a discovery order on August 31, 2018 requiring written discovery and depositions of Jones and other defendants in Mr. Heslin's case.  *See* Lombardi Decl., <u>Ex. 33</u> (Aug. 31, 2021 Combined Sanctions Hearing Tr.).  Jones's counsel responded on October 1, 2018 with a statement claiming that they would not comply with the order.  *Id.* at 8:13-16.  Mr. Heslin promptly brought a motion for contempt.  *Id.* at 8:17-19.  The next day, Jones and his codefendants launched what the appellate court later found was a "frivolous" appeal.  *Jones v. Heslin,* No. 03-19-00811-CV, 2020 WL 1452025 (Tex. App.—Austin, Mar. 25, 2020, pet. denied).

**JONES'S RESPONSE**:  See paragraph 38 below.

**MOVANTS' REPLY**:  See paragraph 38 below.

27.     After Scarlett Lewis sued on October 31, 2018, the court ordered written discovery and depositions of Jones and other defendants.  Lombardi Decl., <u>Ex. 33</u> (Aug. 31, 2021 Combined

---

[3] Mr. Heslin and Ms. Lewis initially brought separate actions against Jones, which were consolidated prior to trial.

Sanctions Hearing Tr.) 9:5-8.   Again, the defendants failed to respond.   *Id.* at 9:8-9.   FSS was

eventually deposed, but its representative was unprepared and unresponsive.   *Id.* at 9:13-17.   On

March 21, 2019, Ms. Lewis then moved for discovery sanctions, asserting that the defendants: (i)

failed to respond to any court-ordered requests for production; (ii) failed to prepare their corporate

representative, who provided no meaningful testimony; (iii) failed to produce relevant videos; and

(iv) spoliated social media evidence and video directories.   *See generally* Lombardi Decl., <u>Ex. 34</u>

(July 6, 2021 Lewis Motion for Contempt).   On April 3, 2019, the court granted Ms. Lewis's

motion, found that Jones and his codefendants violated its discovery order, sanctioned them $8,100

for attorney fees, and denied their motion to dismiss under the TCPA.   Lombardi Decl., <u>Ex. 35</u>

(April 3, 2019 Lewis Hearing Tr.) 52-53.

> **JONES'S RESPONSE**:  See paragraph 38 below.

> **MOVANTS' REPLY**:  See paragraph 38 below.

> 28.     On August 30, 2019, Jones's appeal in Mr. Heslin's case was dismissed for lack of

jurisdiction and the case was remanded to the trial court, which required Jones and FSS to comply

with the discovery order.   *Jones v. Heslin*, 587 S.W.3d 134, 135 (Tex. App.—Austin 2019, no

pet.).   When the defendants refused to provide any discovery or appear for depositions for another

month, Mr. Heslin renewed his motion for contempt on October 1, 2019.   After a hearing, the court

granted the motion, sanctioned the defendants $25,000 for flouting its discovery orders, denied

Jones's TCPA motion to dismiss, and ordered more discovery and depositions on Mr. Heslin's

intentional-infliction-of-emotional-distress claim.   Lombardi Decl., <u>Ex. 33</u> (Aug. 31, 2021

Combined Sanctions Hearing Tr.) 14:3-9, 14:25-15:5.

> **JONES'S RESPONSE**:  See paragraph 38 below.

> **MOVANTS' REPLY**:  See paragraph 38 below.

29.     On December 9, 2019, after Jones again defied discovery, Mr. Heslin moved for a default judgment.  That motion alleged that the Debtors (i) refused to make good-faith responses to written discovery; (ii) failed to preserve or produce documents they created relating to the Sandy Hook shooting and Movants; (iii) admitted to withholding thousands of emails; (iv) deleted relevant messaging systems during litigation; (v) failed to produce videos of relevant InfoWars episodes; and (vi) presented the same unprepared corporate representative they offered months before in the *Lewis* case.  Lombardi Decl., <u>Ex. 32</u> (Dec. 9, 2019 Heslin Motion for Default).  The court later called the corporate representative's testimony "a shockingly offensive mockery of a corporate deposition."  Lombardi Decl., <u>Ex. 2</u> (Jan. 14, 2022 Combined Hearing Tr.) 659.

**JONES'S RESPONSE**:  See paragraph 38 below.

**MOVANTS' REPLY**:  See paragraph 38 below.

30.     On December 18, 2019, the court held a hearing on Mr. Heslin's contempt motion.  There, Jones's counsel represented that Jones and his codefendants would comply with discovery going forward:

> MR JEFFERIES [Jones's trial counsel]:  I am certainly going to comply with [discovery] 100 percent, stay or no stay, moving forward, absolutely.
>
> THE COURT:  So your point is let it come back to the trial judge who's going to try the case and see just how quickly you do that –
>
> MR. JEFFERIES:  Exactly.
>
> THE COURT:  – and how compliant you are with the order before we make potentially outcome determinative decisions?
>
> MR. JEFFERIES:  Exactly right.
>
> THE COURT:  All right.

Lombardi Decl., <u>Ex. 36</u> (Dec. 18, 2021 Hearing Tr.) 80:23-81:13.

**JONES'S RESPONSE**:  See paragraph 38 below.

**MOVANTS' REPLY**:  See paragraph 38 below.

31.     Because of this representation, the court did not enter a default judgment.  Instead, it "assessed sanctions totaling $100,000 and held the defendants in contempt for intentionally disobeying the order."  *See* Lombardi Decl., Ex. 37 (Apr. 1, 2022 Order on Motion for Sanctions) 3.  The court's order stated, "Defendants represented at the December 18th hearing that they would continue to supplement discovery to belatedly comply with the October 18th order.  The amount of supplemental discovery is a factor that will be considered if the motion for sanctions is reconsidered on remand."  Lombardi Decl., Ex. 38 (Dec. 20, 2019 Heslin Order on Motion for Sanctions) 2-3.

        **JONES'S RESPONSE**:  See paragraph 38 below.

        **MOVANTS' REPLY**:  See paragraph 38 below.

32.     Jones and his codefendants did not supplement their discovery at any time during the appeal process.  Lombardi Decl., Ex. 37 (Apr. 1, 2022 Order on Motion for Sanctions) 2.  On March 25, 2020, the Third Court of Appeals sanctioned Jones and FSS $22,500 and ruled that their appeal of Mr. Heslin's case was "frivolous."  *Jones v. Heslin,* 2020 WL 1452025 (Pet. denied).  The Heslin and Lewis cases were remanded back to the trial court in June 2021.  After Jones and FSS continued to fail to provide discovery, Mr. Heslin and Ms. Lewis again moved for contempt.  *See* Lombardi Decl., Ex. 39 (Heslin Second Motion for Contempt); Lombardi Decl., Ex. 34 (July 6, 2021 Lewis Motion for Contempt).  On August 31, 2021, the court held a consolidated hearing on contempt motions filed by both Heslin and Lewis and Pozner and De La Rosa.  *See generally* Lombardi Decl., Ex. 33 (Aug. 31, 2021 Combined Sanctions Hearing Tr.).

        **JONES'S RESPONSE**:  See paragraph 38 below.

        **MOVANTS' REPLY**:  See paragraph 38 below.

ii.    *The Pozner/De La Rosa Action*

33.    Like Mr. Heslin, Mr. Pozner and Ms. De La Rosa filed a defamation action against Jones and related defendants on April 16, 2018.  They later amended their complaint to add intentional-infliction-of-emotional-distress claims.  Lombardi Decl., Ex. 4 (Pozner/De La Rosa Amended Petition) ¶¶ 83-93.

**JONES'S RESPONSE**:  See paragraph 38 below.

**MOVANTS' REPLY**:  See paragraph 38 below.

34.    On May 29, 2018, counsel to Mr. Pozner and Ms. De La Rosa served written discovery requests on Jones.  *See* Lombardi Decl., Ex. 40 (July 27, 2021 Pozner/De La Rosa Motion for Sanctions) ¶ 1.  Responses to those requests were due 30 days later.  *Id.*  After 28 days, however, Jones moved to dismiss under the TCPA, which stayed all discovery.  *Id.*  When that motion was denied, Jones and his codefendants appealed, continuing the discovery stay.  *Id.*

**JONES'S RESPONSE**:  See paragraph 38 below.

**MOVANTS' REPLY**:  See paragraph 38 below.

35.    Jones lost his appeal.  When the cases were remanded to the trial court in June 2021—more than three years since the discovery requests were served—Jones and his codefendants still had not provided discovery.  Lombardi Decl., Ex. 37 (April 1, 2022 Order on Motions for Sanctions) 3.  After the remand, Jones again refused to provide any discovery.  *Id.* Mr. Pozner and Ms. De La Rosa moved for sanctions on July 27, 2021.  *Id.* at 12.  The motion detailed that: (i) Mr. Pozner and Ms. De La Rosa served the Debtors with written discovery on May 29, 2018; (ii) Jones "spent the following year successively violating numerous discovery orders in this Court and the Superior Court of Connecticut in the other Sandy Hook lawsuits[;]" (iii) defendants' counsel "stated the discovery situation would be immediately corrected and

begged the Court to postpone ruling on default sanctions pending those efforts" at the December 18, 2019 hearing; (iv) "over the next year and a half, Defendants made no efforts whatsoever to address the discovery situation[;]" and (v) Jones and his codefendants continued to ignore their discovery duties after the case was remanded, despite Movants providing an added grace period. Lombardi Decl., <u>Ex. 40</u> (Pozner/De La Rosa Motion for Sanctions) 1-11.

**JONES'S RESPONSE**:  See paragraph 38 below.

**MOVANTS' REPLY**:  See paragraph 38 below.

36.    On September 27, 2021, after a hearing on Jones's and his codefendants' repeated discovery abuses, the court rendered default judgments in the Pozner/De La Rosa and Heslin/Lewis Actions—establishing liability in both.  In the Pozner/De La Rosa Action, the court explained that it had "more than a sufficient record to conclude that an escalating series of judicial admonishments, monetary penalties, and non-dispositive sanctions have all been ineffective in deterring the abuse" and stated that it "considered lesser sanctions and determined they would be inadequate to cure the violation in light of the history of the Defendant's conduct."  Lombardi Decl., <u>Ex. 41</u> (Pozner/De La Rosa Default Judgment) 4.  The court found that Jones and his codefendants "unreasonably and vexatiously failed to comply with their discovery duties" and engaged in a "general bad faith approach to litigation," as further evidenced by calling the cases "show trials."  *Id.* at 2, 4.  It noted "the discovery misconduct is properly attributable to the client and not the attorney, especially since Defendants have been represented by seven attorneys over the course of this suit.  Regardless of the attorney, Defendants' discovery abuse remained consistent."  *Id.* at 3.

**JONES'S RESPONSE**:  See paragraph 38 below.

**MOVANTS' REPLY**:  See paragraph 38 below.

37.    In the Heslin/Lewis Action, the court held that Jones and his codefendants displayed "flagrant bad faith and callous disregard for the responsibilities of discovery" and engaged in "pervasive and persistent obstruction."    Lombardi Decl., Ex. 42 (Lewis Default Judgment) 3; Lombardi Decl., Ex. 3 (Heslin Amended Default Judgment) 3-4 (together, the "**Heslin/Lewis Default Judgments**").    The Heslin order also found that "Defendants' egregious discovery abuse justifies a presumption that its defenses lack merit."    Lombardi Decl., Ex. 3 (Heslin Amended Default Judgment) 4.

**JONES'S RESPONSE**:  See paragraph 38 below.

**MOVANTS' REPLY**:  See paragraph 38 below.

38.    Under the default judgments, the court found Jones liable on all claims, conclusively establishing the allegations in the Heslin/Lewis and Pozner/De La Rosa Amended Petitions.  All that remained to litigate was the amount of damages for that liability.

**JONES'S RESPONSE**:  It is undisputed that the Texas court entered a default judgment against Defendant and in favor of Movants based on a finding of discovery violations and further struck Defendant's affirmative defenses in both the Heslin/Lewis Action and the Pozner/De La Rosa Action.  Anything beyond that, including Movants' editorializing and choice snippets from orders, is immaterial to the 11 U.S.C. § 523(a)(6) collateral-estoppel issue and will not meaningfully assist the Court in determining whether Movants are entitled to judgment as a matter of law.  The orders speak for themselves.  Moreover, the discovery abuses that led to the default judgments were almost entirely committed by FSS, and InfoWars, co-defendants of Defendant in the state court actions.  Defendant will discuss this further in his own additional facts and his argument section, but essentially Defendant was defaulted on liability and was not allowed to defend himself based on the actions of his co-defendants rather than his own.

**MOVANTS' REPLY**:  There is no dispute that the state court orders and trial record speak for themselves.  It is thus undisputed that the state court found that Jones *and* FSS and InfoWars, which are wholly-owned by Jones, were responsible for the discovery violations at issue.  Jones Decl. at ¶ 2-3.  In fact, Jones does not dispute (and therefore admits) that he failed to provide discovery, and instead claims only that "the discovery abuses that led to the default judgments were ***almost*** entirely committed by FSS, and InfoWars[.]"  (Emphasis added.)  It is also undisputed that the state court specifically mentioned Jones and his conduct in its

finding on discovery abuses: "the time for [testimony concerning the level of Jones's culpability] when *Mr. Jones* chose not to fully participate."  Jones's Objection to Motion for Summary Judgment, ¶ 4 (emphasis added).

39.     The default judgments did not deter Jones and FSS from abusing discovery.  On December 15, 2021, Movants had to bring more sanctions motions after the Debtors failed to produce a deponent for a corporate deposition on topics relating to damages.  Lombardi Decl., Ex. 43 (Dec. 15, 2021 Motion for Sanctions Regarding Corporate Deposition).  At a January 14, 2022 hearing on the motions, the Court stated:

> I'm confident that there are people who don't want our legal system to work and will be happy to have me forced into deciding almost everything about this case, but that's not what I want. I want it to work, but it only works if discovery works.  And what I have seen so far is literal years of blatant discovery abuse and intentional discovery abuse, and I'm tired of that.

Lombardi Decl., Ex. 2 (January 14, 2022 Hr'g Tr. 84:4-11).

**JONES'S RESPONSE**:  See paragraph 40 below.

**MOVANTS' REPLY**:  See paragraph 40 below.

40.     On January 24, 2022, the court granted Movants' motions for sanctions and ordered the Debtors to pay Movants' expenses and appear for another deposition.  Lombardi Decl., Ex. 44 (Jan. 24, 2022 Order on Motion for Sanctions).  Movants then filed another sanctions motion on February 22, 2022, after the Debtors failed to prepare a corporate deponent for the fifth time.  Lombardi Decl., Ex. 45 (Feb. 22, 2022 Motion for Sanctions Regarding Corporate Deposition).  On April 1, 2022, the court granted the sanctions motions and awarded Movants all expenses incurred in connection with discovery throughout the cases.  Lombardi Decl., Ex. 37 (April 1, 2022 Order on Motion for Sanctions).  The court found Jones and his codefendants "intentionally thwarted the legitimate discovery process in these [Pozner/De La Rosa and Heslin/Lewis] cases," which "exhibits a disregard for and disrespect of the integrity of this Court and our judicial system."  *Id.* at 4.  The court went on to find that "Plaintiffs' discovery of facts necessary to

properly present their claim for damages has been irreparably prejudiced in virtually all respects. Absent severe action from this Court, Defendants will ultimately profit from their sabotage of the discovery process." *Id.*

> **JONES'S RESPONSE**:  It is undisputed that the Texas court entered an order on sanctions related to damages.  Anything beyond that, including Movants' editorializing and choice snippets from orders, is immaterial to the 11 U.S.C. § 523(a)(6) collateral-estoppel issue and will not meaningfully assist the Court in determining whether Movants are entitled to judgment as a matter of law.  The orders speak for themselves.

> **MOVANTS' REPLY**:  There is no dispute that the orders speak for themselves.

41.     In the Heslin/Lewis Action, after the court found Jones liable on all counts, it held a damages trial before a jury.  Jones, Mr. Heslin, Ms. Lewis, experts, and witnesses testified over a nine-day trial.  On the stand, Jones admitted that the Sandy Hook shooting was "100% real." Lombardi Decl., Ex. 1 (Aug. 3, 2022 Heslin/Lewis Trial Tr. Vol. 7) 16:24.

> **JONES'S RESPONSE**:  See paragraph 44 below.

> **MOVANTS' REPLY**:  See paragraph 44 below.

42.     At trial, the judge explained that Jones and his codefendants were precluded from contesting any facts relating to their liability:

> We've already had this conversation multiple times in this trial, in addition to it before this trial, the time for that was during discovery, when Mr. Jones chose not to fully participate.  It is not the time to do that now.  If there is anything that he would like to put forth as a defense, he needed to do it a year ago during the discovery process.  It's too late now.

Lombardi Declaration, Ex. 46 (Aug. 2, 2022 Heslin/Lewis Trial Tr. Vol. 6) 200.

> **JONES'S RESPONSE**:  See paragraph 44 below.

> **MOVANTS' REPLY**:  See paragraph 44 below.

43.     The court went on to detail its reasoning for rendering the default judgments and explained that Jones could no longer contest liability:

> My ruling, which was based on a longstanding principle in the law that, if you intentionally repeatedly, and over years in this case, again and again, refuse to participate in discovery, that is proof that you do not have a meritorious defense.  That was the basis of my ruling.  You cannot attack that in this trial.

*Id.* at 201:1-6.

**JONES'S RESPONSE**:  See paragraph 44 below.

**MOVANTS' REPLY**:  See paragraph 44 below.

44.     After Jones ignored these instructions, the judge instructed him as follows:

> You're also under oath to tell the truth.  You've already violated that oath twice today in just those two examples.  It seems absurd to instruct you again that you must tell the truth while you testify, yet here I am:  You must tell the truth while you testify…. You are under oath.  That means things must actually be true when you say them.

*Id.* at 202:5-10.

**JONES'S RESPONSE**:  It is undisputed that Defendant was precluded from contesting any facts related to liability at the damages portion of the trial.  The orders and transcripts speak for themselves.

**MOVANTS' REPLY**:  It is undisputed that the state court orders and transcripts speak for themselves.

45.     The court instructed the jury that "Defendants Alex Jones and Free Speech Systems, LLC committed defamation against Neil Heslin," and that Jones "knew the statements were false" or had "a high degree of awareness that they were probably false, to an extent that [Jones] in fact had serious doubts as to the truth of the statements" when he made them.  Lombardi Decl., Ex. 5 (Heslin/Lewis Compensatory Damages Jury Charge) 4; Lombardi Decl., Ex. 6 (Heslin/Lewis Exemplary Damages Jury Charge) 4.  It also instructed jurors that "Defendants Alex Jones and Free Speech Systems, LLC committed intentional infliction of emotional distress against Neil Heslin and Scarlett Lewis in a continuing course of conduct from 2013 to 2018," and such conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at

6.  Based on those instructions and the evidence, the jury awarded Mr. Heslin and Ms. Lewis more

than $4 million in compensatory damages and $45 million in exemplary damages.   Lombardi

Decl., Ex. 7 (Heslin/Lewis Final Judgment).

> **JONES'S RESPONSE**:  It is undisputed that the jury was instructed pursuant to
> Docs. 29-5, 29-6.  It is undisputed that the jury awarded Heslin and Lewis damages
> and that Docs. 29-5, 29-6, 29-7, speak for themselves.

> **MOVANTS' REPLY**:  It is undisputed that the jury instructions and damages
> awards speak for themselves**.**

46.    Although exemplary damages are normally capped by Texas statute, the court

found that a statutory exception to the cap applied because Jones violated the Texas Penal Code

by "knowingly or intentionally" causing injury to Movants, who were already suffering "severe

emotional disturbance" due to the loss of their son.  *Id.* at 3; Tex. Civ. Prac. & Rem. § 41.008(c)(7);

Tex. Penal Code § 22.04.

> **JONES'S RESPONSE**:  Defendant disputes that the referenced document in
> Statement 46, (Doc. 29-7), which is the state court's final judgment, makes any
> finding that Defendant violated the Texas Penal Code or did so "knowingly or
> intentionally."  The words "knowingly or intentionally" are not in the judgment and
> no code of the Texas Penal Code is cited in the judgment.

> **MOVANTS' REPLY**:  Texas provides that "exemplary damages awarded against
> a defendant may not exceed an amount equal to the greater of (1)(A) two times the
> amount of economic damages; plus (B) an amount equal to any noneconomic
> damages found by the jury, not to exceed $750,000; (2) $200,000." Tex. Civ. Prac.
> & Rem. § 41.008(b).  This limitation on damages does not apply to enumerated
> causes of action where "the conduct was committed knowingly or intentionally."
> Tex. Civ. Pract. & Rem. § 41.008(c).  Jones does not dispute, and therefore admits,
> that the court found that this statutory exception applied.  Accordingly, the court
> necessarily found his "conduct was committed knowingly or intentionally."  Jones
> raises no genuine dispute.

Dated:  July 14, 2023

/s/ *Jennifer J. Hardy*

**WILLKIE FARR & GALLAGHER LLP**
Jennifer J. Hardy (Texas Bar No. 24096068)
600 Travis Street
Houston, Texas 77002
Telephone: 713-510-1700
Facsimile: 713-510-1799
Email: jhardy2@willkie.com


**AND**

Rachel C. Strickland (admitted *pro hac vice*)
Stuart R. Lombardi (admitted *pro hac vice*)
Ciara A. Sisco (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: 212-728-8000
Facsimile: 212-728-8111
Email: rstrickland@willkie.com
        slombardi@willkie.com
        csisco@willkie.com


*Bankruptcy Co-Counsel to the Texas Plaintiffs*

**MCDOWELL HETHERINGTON LLP**
Avi Moshenberg (TX Bar No. 24083532)
1001 Fannin Street
Suite 2400
Houston, Texas 77002
Telephone: 713-337-5580
Facsimile: 713-337-8850
Email: avi.moshenberg@mhllp.com


**AND**

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, PC**
Jarrod B. Martin (TX Bar No. 24070221)
1200 Smith Street
Suite 1400
Houston, Texas 77002
Telephone: 713-356-1280
Facsimile: 713-658-2553
Email: jarrod.martin@chamberlainlaw.com


*Bankruptcy Co-Counsel to the Texas Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was filed and served on all persons entitled to receive notice via operation of this Court's CM/ECF system on July 14, 2023.

*/s/ Jennifer J. Hardy*
Jennifer J. Hardy
