### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| IN RE: | § | Chapter 11 |
| | § | |
| ALEXANDER E. JONES, | § | Case No. 22-33553 (CML) |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| -------------------------------------------------------- | § | |
| NEIL HESLIN, SCARLETT LEWIS, | § | |
| LEONARD POZNER, VERONIQUE DE | § | Adv. Proc. No. 23-3035 |
| LA ROSA, AND ESTATE OF MARCEL | § | |
| FONTAINE, | § | |
| | § | |
| Movants, | § | |
| | § | |
| v. | § | |
| | § | |
| ALEXANDER E. JONES, | § | |
| | § | |
| Defendant. | § | |
| | § | |

---

### DEBTOR ALEXANDER E. JONES' MOTION FOR LEAVE TO APPEAL

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................................ 2

QUESTIONS PRESENTED .............................................................................................................. 6

RELIEF REQUESTED ...................................................................................................................... 7

ARGUMENT ...................................................................................................................................... 7

   I.    There is a Controlling Question of Law ................................................................................. 8

   II.   There are Substantial Grounds for Difference of Opinion ................................................. 10

      A.  The Essentiality Prong .................................................................................................... 12

          1.  The Disjunctive Jury Instruction for Defamation in the Heslin/Lewis Action
              Allowed the Jury to Award Damages Based on Reckless Conduct ....................... 12

          2.  The Bankruptcy Court Improperly Relied on Allegations in Plaintiffs' State-
              Court Petitions ........................................................................................................... 18

      B.  The Court Should Review the Remaining Elements of Collateral Estoppel Because
          such a Determination is Inextricably Intertwined with Issues Warranting
          Interlocutory Review ...................................................................................................... 21

   III.  An Immediate Appeal Would Materially Advance the Ultimate Termination of
        the Litigation ........................................................................................................................ 23

CONCLUSION ................................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adhikari v. Daoud & Partners*,
2012 WL 718933 (S.D. Tex. March 5, 2012) ........................................................................23

*Antrican v. Odom*,
290 F.3d 178 (4th Cir. 2002) .................................................................................................22

*Bently v. Bunton*,
94 S.W.3d 561, 591 (Tex. 2002).............................................................................................12

*Bolmer v. Oliveira*,
594 F.3d 134 (2d Cir. 2010)...................................................................................................22

*Bradburn Parent Tchr. Store, Inc. v. 3M*,
No. CIV.A.02-7676, 2005 WL 1819969, at *3 (E.D. Pa. Aug. 2, 2005)..................................8

*C & H Transp. Co. v. Wright*,
396 S.W.2d 443 (Tex. Civ. App. 1965) ..................................................................................19

*City of Austin v. Liberty Mut. Ins.*,
431 S.W.3d 817 (Tex. App. 2014)..........................................................................................19

*Clark-Dietz & Assocs.-Engineers, Inc. v. Basic Const. Co.*,
702 F.2d 67 (5th Cir. 1983) ...................................................................................................24

*Coates v. Brazoria County Tex.*,
919 F. Supp. 2d 863 (S.D. Tex. 2013) ...................................................................................23

*In re Coudert Bros. LLP Law Firm Adversary Proceedings*,
447 B.R. 706 (S.D.N.Y. 2011).................................................................................................1

*In re Dang*,
560 B.R. 287 (S.D. Tex. 2016) ..............................................................................................12

*Eagle Props., Ltd. v. Scharbauer*,
807 S.W.2d 714 (Tex. 1990)............................................................................................11, 13

*Matter of First Financial Development Corp.*,
960 F.2d 23 (5th Cir. 1992) .....................................................................................................7

*First Owners' Ass'n of Forty Six Hundred v. Gordon Props., LLC*,
470 B.R. 364 (E.D. Va. 2012).................................................................................................1

*In re Global Marine, Inc.*,
108 B.R. 1007 (S.D. Tex. 1988) ...................................................................7

*Gober v. Terra*
*+ Corp. (In re Gober)*, 100 F.3d 1195, 1201 (5th Cir. 1996) ..................................10

*Grogan v. Garner*,
498 U.S. 279 (1991) ...................................................................10

*In re Harrison*,
180 F. App'x 485 (5th Cir. 2006) ...................................................................19

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ...................................12

*Heslin v. Jones, et al.*,
Case No. D-1-GN-18-001835 ...................................................................2, 3

*Hidden Cove Park & Marina v. Lexington Ins. Co.*,
No. 17-cv-193, 2018 WL 501079 (E.D. Tex. Jan. 22, 2018) ...................................8

*Matter of Hoffman*,
955 F.3d 440 (5th Cir. 2020) ...................................................................10, 11

*Ichinose v. Homer Nat'l Bank (Matter of Ichinose)*,
946 F.2d 1169 (5th Cir. 1991) ...................................................................7

*Irvin v. Faller (In re Faller)*,
547 B.R. 766 (Bankr. W.D. Ky. 2016) ...................................................................14

*Jefferson v. Holland (In re Holland)*,
428 B.R. 465 (Bankr. N.D. Ill. 2010) ...................................................................15

*In re Kauanui*,
No. 14-00077, 2015 WL 359088 (Bankr. D. Haw. Jan. 23, 2015) ...................................18

*Kawaauhau v. Geiger*,
523 U.S. 57 (1998) ...................................................................10, 12

*Kremer v. Chem. Const. Corp.*,
456 U.S. 461 (1982) ...................................................................22

*Langan v. Evers (In re Evers)*,
212 B.R. 945 (Bankr. E.D. Wis. 1997) ...................................................................14

*Lewis v. Jones, et al.*,
Case No. D-1-GN-18-006623 ...................................................................2

*Mahadevan v. Bikkina (In re Mahadevan)*,
   617 F. Supp. 3d 654 (S.D. Tex. 2022) ...............................................14, 17, 18, 20

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) .........................................................................22

*Merritt v. Rizzo (In re Rizzo)*,
   337 B.R. 180 (Bankr. N.D. Ill. 2006) ............................................................15

*In re Microsoft Corp. Antitrust Litig.*,
   274 F.Supp.2d 741 (D.Md.2003) .....................................................................8

*Miller v. J.D. Abrams, Inc. (In re Miller)*,
   156 F.3d 598 (5th Cir. 1998) ..........................................................................10

*Montana v. United States*,
   440 U.S. 147 (1979)........................................................................................22

*Moore v. City of Wynnewood*,
   57 F.3d 924 (10th Cir. 1995) ..........................................................................22

*Moye v. Cage*,
   2011 WL 3444221 (S.D. Tex. Aug. 8, 2011) ...................................................8

*O'Gara v. Hunter (In re Hunter)*,
   610 B.R. 479 (Bankr. M.D.N.C. 2019).............................................................14

*In re Pancake*,
   106 F.3d 1242 (5th Cir 1997) ....................................................................18, 19

*Pemex Exploration y Produccion v. BASF Corp.*,
   2011 WL 11569219 ..........................................................................................23

*Pozner and De La Rosa v. Jones, et al.*,
   Case No. D-1-GN-18-001842 ............................................................................2

*Purser v. Scarbrough (In re Scarbrough)*,
   516 B.R. 897 (Bankr. W.D. Tex. 2014).................................................15, 16, 17

*Raspanti v. Keaty (In re Keaty)*,
   397 F.3d 264 (5th Cir. 2005) ..........................................................................10

*In re Red River Energy, Inc.*,
   415 B.R. 280 (S.D. Tex. 2009) ..........................................................................1

*Roderick v. Levy, (In re Roderick Timber Co.)*, 185 B.R. 601, 604 (B.A.P. 9th Cir.
   1995); ................................................................................................................1

*Rodriguez v. City of Corpus Christi*,
    No. 2:21-CV-00297, 2023 WL 6371029 (S.D. Tex. June 10, 2023)........................................9

*Ryan v. Flowserve Corp.*,
    444 F. Supp. 2d 718 (N.D. Tex. 2006) ..................................................................................9

*Scarbrough v. Purser (In re Scarbrough)*,
    836 F.3d 447 (5th Cir. 2016) ...............................................................................................15

*Scurlock Oil Co. v. Smithwick*,
    724 S.W.2d 1 (Tex. 1986)....................................................................................................21

*Suboh v. District Attorney's Office of Suffolk Dist.*,
    298 F.3d 81 (1st Cir. 2002).................................................................................................22

*Swint v. Chambers County Comm'n*,
    514 U.S. 35 (1995)..............................................................................................................22

*Sysco Food Servs., Inc. v. Trapnell*,
    890 S.W.2d 796 (Tex. 1994)...............................................................................................11

*DaimierChrysler Servs. N. Am. LLC v. Taranto (In re Taranto)*,
    365 B.R. 85 (B.A.P. 6th Cir. 2007)........................................................................................1

*Tarter v. Metro. Sav. & Loan Ass'n*,
    744 S.W.2d 926 (Tex. 1988)...............................................................................................11

*Tesco Corp. v. Weatherford Intern., Inc.*,
    722 F. Supp. 2d 755 (S.D. Tex. 2010) .............................................................................8, 23

*Thompson v. Durrance (In re Durrance)*,
    84 B.R. 238 (Bankr. M.D. Fla. 1988) .................................................................................14

*In re Tile Outlet, Inc.*,
    2006 WL 17116125 (S.D. Tex. June 16, 2006) ....................................................................8

*Total E&P USA, Inc. v. Marubeni Oil & Gas USA, Inc.*,
    No. CV H-16-2671, 2018 WL 11469624 (S.D. Tex. Nov. 6, 2018) .......................................8

*Van Dyke v. Boswell, O'Toole, Davis & Pickering*,
    697 S.W.2d 381 (Tex. 1985)...............................................................................................11

*Wheeler v. Laudani*,
    783 F.2d 610 (6th Cir. 1986) .........................................................................................13, 14

*Witowski v. Welch*,
    173 F.3d 192 (3d Cir.1999)..................................................................................................8

**Codes**

Texas Penal Code Section 22.04 .................................................................................4

Texas Remedies Code, Section 41.008(c) ....................................................................4

United States Code Title 28 Section 158(a) .................................................................7

**Statutes**

11 U.S.C. § 523(a)(6) ..............................................5, 6, 9, 10, 11, 13, 14, 15, 17, 18, 20, 21, 22, 23

28 U.S.C. § 157 ...........................................................................................................7

28 U.S.C. § 158(a)(3) ..............................................................................................1, 7

28 U.S.C. § 1292 .........................................................................................................7

28 U.S.C. § 1292(b) ..............................................................................................1, 7, 8

28 U.S.C. § 1738 .......................................................................................................22

**Other Authorities**

Bankruptcy Rule 8004 ............................................................................................1, 7

Federal Rules of Bankruptcy Procedure Rules 8001, 8002, and 8004 .........................1

Restatement (Second) of Judgments § 27, cmt. (h) ...................................................13

Restatement (Second) of Judgments § 28 .................................................................22

Pursuant to 28 U.S.C. § 158(a)(3) and Rules 8001, 8002, and 8004 of the Federal Rules of Bankruptcy Procedure, Defendant/Debtor, Alexander E. Jones ("Debtor"), respectfully moves to appeal an interlocutory order entered by the United States Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court") granting partial summary judgment to Plaintiffs Neil Heslin, Scarlett Lewis, Leonard Pozner, and Veronique De La Rosa (collectively, "Plaintiffs"). (Doc. 46). A copy of the *Memorandum Decision on Texas Plaintiffs' Motion for Summary Judgment Against Jones* ("Texas Order") is attached hereto as **Exhibit 1**.

## PRELIMINARY STATEMENT

By this Motion, Debtor asks this Court for leave to appeal the Bankruptcy Court's Order pursuant to Bankruptcy Rule 8004 and 28 U.S.C. § 158(a)(3), which confers district courts with appellate jurisdiction over interlocutory orders with leave of the district court. While 28 U.S.C. § 158(a)(3) specifies no criteria for granting such leave, courts often look to the prerequisites set forth in 28 U.S.C. § 1292(b) to determine whether to allow an interlocutory appeal. *In re Red River Energy, Inc.*, 415 B.R. 280, 284 (S.D. Tex. 2009); *see also DaimierChrysler Servs. N. Am. LLC v. Taranto (In re Taranto)*, 365 B.R. 85, 87 (B.A.P. 6th Cir. 2007); *Roderick v. Levy (In re Roderick Timber Co.)*, 185 B.R. 601, 604 (B.A.P. 9th Cir. 1995); *First Owners' Ass'n of Forty Six Hundred v. Gordon Props., LLC*, 470 B.R. 364, 371 (E.D. Va. 2012); *In re Coudert Bros. LLP Law Firm Adversary Proceedings*, 447 B.R. 706, 711 (S.D.N.Y. 2011). Pursuant to 28 U.S.C. § 1292(b), leave to appeal should be granted when the order involves (1) a question of law that is controlling; (2) as to which there is a substantial ground for difference of opinion; and (3) an immediate appeal of which would materially advance the ultimate termination of the litigation. *Id.* For the reasons set forth below, all factors are present here, and the Court should grant Debtor's leave to appeal the Bankruptcy Court's Order.

1

## FACTUAL BACKGROUND

1.      On December 2, 2022 ("Petition Date"), Debtor commenced a voluntary case under Chapter 11 of the Bankruptcy Code. (Bankruptcy Doc. 1).

2.      On March 10, 2023, Plaintiffs filed the instant adversary proceeding. (Doc. 1).

3.      Plaintiffs are parents of children murdered in the Sandy Hook Elementary School Shooting in December 2012. Prior to this adversary proceeding, Plaintiffs sued Debtor and Free Speech Systems, LLC, for defamation and intentional infliction of emotional distress ("IIED").

4.      In 2018, Plaintiff Neil Heslin filed a lawsuit in the 261st Judicial District Court of Travis County, Texas styled *Heslin v. Jones, et al.*, Case No. D-1-GN-18-001835 ("Heslin Action").

5.      That same year, Plaintiff Scarlett Lewis filed a lawsuit in the 98th Judicial District of Travis County, Texas styled *Lewis v. Jones, et al.,* Case No. D-1-GN-18-006623 ("Lewis Action").

6.      The two cases were later consolidated and is referred to by the parties and the Bankruptcy Court as the "Heslin/Lewis Action."

7.      Also in 2018, Plaintiffs Leonard Pozner and Veronique De La Rosa filed a lawsuit in the 345th Judicial District Court of Travis County, Texas styled *Pozner and De La Rosa v. Jones, et al.*, Case No. D-1-GN-18-001842. The parties and the Bankruptcy Court refer to this action as the "Pozner/De La Rosa Action."

8.      In September 2021, the court in the Lewis Action entered an Order on Lewis's Motion for Contempt in favor of Plaintiff Scarlett Lewis and against Defendant and Free Speech Systems, LLC (the "Lewis Default Judgment"). (Doc. 29-42).

2

9.      On October 15, 2021, the court in the Pozner/De La Rosa Action entered a certain Amended Order on Plaintiff's Motion to Compel and Motion for Sanctions in favor of Plaintiffs Leonard Pozner and Veronique De La Rosa and against Defendant FSS (the "Pozner/De La Rosa Default Judgment"). (Doc. 29-41).

10.     Less than two weeks later, on October 27, 2021, the court in the Heslin Action entered a certain Amended Order on Plaintiff's Motion for Default Judgment and 2nd Motion for Contempt in favor of Plaintiff Neil Heslin and against Debtor and FSS (the "Heslin Default Judgment"). (Doc. 29-3).

11.     The Heslin/Lewis Action proceeded to trial on damages for Heslin's defamation claim and Heslin and Lewis's IIED claims. After a multi-day trial, where Debtor was not allowed to testify as to his degree of culpability, the court issued a charge of the court for compensatory damages ("Heslin/Lewis Compensatory Damages Jury Charge") (Doc. 29-5), and a separate charge for exemplary damages ("Heslin/Lewis Exemplary Damages Jury Charge") (Doc. 29-6). Both jury charges contained the same instructions for defamation and IIED and are summarized as follows:

| Defamation Against Neil Heslin | Intentional Infliction of Emotional Distress |
|---|---|
| You are instructed that Defendants Alex Jones and Free Speech Systems, LLC committed defamation against Neil Heslin.<br><br>You are further instructed that Defendants Alex Jones and Free Speech Systems, LLC published statements that were false and defamatory concerning Neil Heslin on June 26, 2017 and July 20, 2017.<br><br>You are further instructed that Defendants Alex Jones and Free Speech Systems, LLC knew or should have known, in the exercise of ordinary care, that the statements published | You are instructed that Defendants Alex Jones and Free Speech Systems, LLC committed intentional infliction of emotional distress against Neil Heslin and Scarlett Lewis in a continuing course of conduct from 2013 to 2018.<br><br>Intentional infliction of emotional distress means the defendant acts intentionally or recklessly with extreme and outrageous conduct to cause the plaintiff emotional distress and the emotional distress suffered by plaintiff was severe. |

| | |
|---|---|
| on June 26, 2017 and July 20, 2017 were false and had the potential to be defamatory.<br><br>You are further instructed that at the time Defendants Alex Jones and Free Speech Systems, LLC published the statements on June 26, 2017 and July 20, 2017, Defendants knew the statements were false as it related to Neil Heslin, or that Defendants published the statements with a high degree of awareness that they were probably false, to an extent that Defendants in fact had serious doubts as to the truth of the statements. | |

12.    The jury awarded Heslin $110,000 in compensatory damages and $4.2 million in exemplary damages on the defamation claim. (Doc. 29-5, 29-6). As for IIED, the jury awarded Heslin and Lewis each $2 million in compensatory damages. (Doc. 29-5). They were also each awarded $20.5 million in exemplary damages. (Doc. 29-6).

13.    In September 2022, one month after the jury awarded damages, Heslin and Lewis filed a motion for leave to file a Fourth Amended Petition. The amended petition added an allegation that Debtor and Free Speech's conduct violated section 22.04 of the Texas Penal Code. (Doc. 29-8 at ¶ 118).

14.    Plaintiffs amended their Petition to add the allegation that Debtor committed a felony because exemplary damages are statutorily capped in Texas except when a defendant "knowingly or intentionally" commits an enumerated felony under section 41.008(c) of the Texas Civil Practices and Remedies Code. Thus, Plaintiffs asked the Court to disregard the cap on exemplary damages even though the question of whether Debtor knowingly or intentionally committed a felony was never before the jury.

15.    In January 2023, the state court granted the motion for leave to file the Fourth Amended Petition. Then the court entered a Final Judgment awarding Heslin $26.81 million,

Lewis $22.5 million, pre- and post-judgment interest, and court costs. (Doc. 29-7). The Final Judgment states that Heslin and Lewis are entitled to relief based on "the jury's findings, along with the Court's default judgment and resulting admissions." (*Id.*). The court further held that if "a necessary element of their recovery has been omitted, the Court implies a finding to support it." (*Id.*). Thus, the Heslin/Lewis Court found, by implication, that Debtor committed a felony almost six months after the jury entered its verdict and accordingly declined to apply the statutory exemplary damages cap.

16.     As for the Pozner/De La Rosa Action, there has not yet been a trial on damages.

17.     On March 10, 2023, Plaintiffs filed the instant adversary proceeding seeking a declaratory judgment that the damages arising out of the Heslin/Lewis Action, and the unliquidated damages arising out of the Pozner/De La Rosa Action are nondischargeable under 11 U.S.C. § 523(a)(6).

18.     The parties agreed to an expedited scheduling order and briefing schedule to determine the legal issue of whether the doctrine of collateral estoppel precluded Debtor from relitigating the state court findings and entitled Plaintiffs to summary judgment on their claims. (Doc. 13 at 3).

19.     Plaintiffs filed their *Texas Plaintiffs' Motion for Summary Judgment* and *Statement of Uncontested Material Facts in Support of Plaintiffs Heslin, Lewis, Pozner, and De La Rosa's Motion for Summary Judgment* on May 12, 2023. (Docs. 27, 28).

20.     Debtor filed his *Response to Plaintiffs' Motion for Summary Judgment* and *Response to Plaintiffs' Statement of Uncontested Material Facts* on June 13, 2023. (Docs. 32, 33).

21.     Plaintiffs filed their *Movants' Reply in Support of Their Motion for Summary Judgment* on June 14, 2023. (Doc. 37).

22.     On August 15, 2023, the Bankruptcy Court held a hearing on Plaintiffs' Motion for Summary Judgment and a similar summary judgment motion in the Connecticut adversary proceeding and heard arguments from all parties. (Doc. 43).

23.     The Bankruptcy Court issued its Texas Order on October 19, 2023. (Doc. 46). The Bankruptcy Court granted summary judgment on the Heslin defamation debt claim, consisting of $110,000 in compensatory damages and $4.2 million in exemplary damages. The Bankruptcy Court also partially granted summary judgment on Heslin and Lewis's IIED claims, reasoning that Debtor committed willful and malicious injury to Heslin and Lewis based on the deemed admissions concerning the IIED claims. However, the Bankruptcy Court determined that the jury was asked to find damages based on intentional or reckless acts, and thus, a trial must be conducted to see what damages stem from the admitted allegations constituting willful and malicious injury. Finally, the Court granted summary judgment concerning Pozner and De La Rosa, reasoning that Debtor committed willful and malicious injury to them based on the deemed admissions concerning the defamation and IIED claims. However, just as it did with the Heslin/Lewis Action, the Bankruptcy Court determined that a trial must proceed in the Bankruptcy Court to determine the amount of damages based on the willful and malicious injuries. (Doc. 46).

24.     On November 2, 2023, Debtor filed a notice of appeal from the Texas Order, accompanied by this *Motion for Leave to Appeal Order on Texas Plaintiffs' Motion for Summary Judgment* (the "Motion").

## QUESTIONS PRESENTED

25.     The questions presented in this case are broken down as one broader question and two narrower questions. As to the broad question, Debtor asks the Court:

    1.    Does the doctrine of collateral estoppel preclude litigation on nondischargeability under 11 U.S.C. § 523(a)(6) due to default judgments on defamation and intentional infliction of emotional distress in Texas state court?

26.      As to the narrower questions that are encompassed by the broader question, Debtor asks the Court:

    2.    Can a bankruptcy court, in applying the doctrine of collateral estoppel to a default judgment, rely solely on the allegations from a state-court petition to find that a defendant acted with the requisite level of culpability under § 523(a)(6)?

    3.    Does a state-court jury instruction on defamation that allows a jury to award damages based on reckless conduct necessarily decide the issue of willful and malicious injury under § 523(a)(6)?

## RELIEF REQUESTED

27.      By this Motion, Debtor respectfully requests that the Court grant leave to appeal the Texas Order. As set forth herein, Debtor has satisfied the requirements for interlocutory review of the Texas Order and the reversal of the Texas Order would materially hasten termination of the instant case. For these reasons, and the reasons set forth more fully below, Debtor seeks entry of an order pursuant to Bankruptcy Rule 8004 and 28 U.S.C. § 158(a)(3) granting leave to appeal the Texas Order.

## ARGUMENT

28.      Section 158(a) of title 28 of the United States Code grants United States District Courts jurisdiction to hear appeals from interlocutory orders issued by a Bankruptcy Court at their discretion. 28 U.S.C. § 158(a)(3) (noting that a District Court shall have jurisdiction to hear appeals "from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under" 28 U.S.C. § 157 (internal citation omitted)). Although Section 158(a) is silent on the question of how this discretion is to be exercised, courts look to the

factors set forth in 28 U.S.C. § 1292, which define the scope of appellate jurisdiction over interlocutory appeals from the district courts.

29.      Leave to appeal is an exercise of judicial discretion dependent on the circumstances of the case. When deciding whether to grant leave to appeal under Bankruptcy Rule 8004, courts consider factors which include whether: (1) the appeal involves a controlling question of law as to which there is (2) substantial ground for difference of opinion and (3) when an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Ichinose v. Homer Nat'l Bank (Matter of Ichinose)*, 946 F.2d 1169, 1177 (5th Cir. 1991); *In re First Fin. Dev. Corp.*, 960 F.2d 23, 25 (5th Cir. 1992); *In re Global Marine, Inc.*, 108 B.R. 1007, 1009 (S.D. Tex. 1988); *Moye v. Cage*, No. H-10-4531, 2011 WL 3444221, at *3-4 (S.D. Tex. Aug. 8, 2011); *In re Tile Outlet, Inc.*, No. 05-80340, 2006 WL 1716125, at *6-7 (S.D. Tex. June 16, 2006).

30.      Because each of these factors weighs in favor of leave to appeal, this Court should grant the Movant's Motion for leave to appeal the Texas Order.

## I.      There is a Controlling Question of Law

31.      To constitute a controlling issue of law, an issue does not need to be outcome determinative. *Tesco Corp. v. Weatherford Intern., Inc.*, 722 F. Supp. 2d 755, 765-66 (S.D. Tex. 2010). Rather, the determination "hinges upon its potential to have some impact on the course of the litigation." *Id.* at 766. Moreover, "[a] ruling turns on a controlling question of law for purposes of an interlocutory appeal under § 1292(b) only if it involves 'a pure issue of law, *i.e.*, a question the appellate court can efficiently rule on without making an intensive inquiry into the record.'" *Total E & P USA, Inc. v. Marubeni Oil & Gas USA, Inc.*, No. H-16-2671, 2018 WL 11469624, at

*2 (S.D. Tex. Nov. 6, 2018) (quoting *Hidden Cove Park & Marina v. Lexington Ins. Co.*, No. 4:17-CV-193, 2018 WL 501079, *1 (E.D. Tex. Jan. 22, 2018)).

32.     Many courts have found that an order based on offensive collateral estoppel is a question of law that controls many aspects of the proceedings in substantial respects. *Bradburn Parent Tchr. Store, Inc. v. 3M*, No. CIV.A.02-7676, 2005 WL 1819969, at *3 (E.D. Pa. Aug. 2, 2005) ("There can be little doubt that the Court's June 9, 2005 Order applying offensive collateral estoppel to certain facts established in *LePage's* was a ruling on an issue of law."); *see also Witowski v. Welch*, 173 F.3d 192, 197 (3d Cir.1999) (in reviewing collateral estoppel order, question is whether district court correctly applied the law to determine that certain matters were barred); *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 742 (D. Md. 2003) (certifying court's order applying collateral estoppel to preclude relitigation of certain issues in antitrust action for interlocutory appeal).

33.     Here is no exception. In this appeal, the straightforward, broad question of law presented is whether the doctrine of collateral estoppel precludes litigation on nondischargeability under 11 U.S.C. § 523(a)(6) due to default judgments on defamation and IIED in Texas state court. Within that broad question is two narrower ones: (1) can a bankruptcy court, in applying the doctrine of collateral estoppel to a default judgment, rely solely on the allegations from a state-court petition to find that a defendant acted with the requisite level of culpability under § 523(a)(6)?; and (2) does a state-court jury instruction on defamation that allows a jury to award damages based on reckless conduct necessarily decide the issue of willful and malicious injury under § 523(a)(6)? All of these questions are pure issues of law that the Court can decide without the need to review an extensive record. Moreover, these questions materially affect the litigation's outcome because the application of the doctrine of collateral estoppel under Texas law was the

only issue decided by the Bankruptcy Court, and its determination is the central question of the adversary proceeding.

**II.    There are Substantial Grounds for Difference of Opinion**

34.    A substantial ground for difference of opinion exists where "a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Rodriguez v. City of Corpus Christi*, No. 2:21-CV-00297, 2023 WL 6371029, at *2 (S.D. Tex. June 10, 2023) (quoting *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723-24 (N.D. Tex. 2006)).

35.    A brief summary of the relevant law is in order here. The Bankruptcy Code exempts damages from an injury caused willfully and maliciously by a debtor with the intent to cause such injury to another person or their property from discharge. 11 U.S.C. § 523(a)(6). The Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), settled a split among the circuits and clarified the scope of the willful and malicious injury exception to dischargeability in § 523(a)(6). The Court noted that the word "willful" modifies the word "injury," and that nondischargeability takes a deliberate or intentional injury rather than a deliberate or intentional act that leads to injury. *Id.* With this formulation, the Court instructed litigants and courts to think of intentional torts (which generally require that the actor intend the consequences of an act, not simply the act itself) and ultimately held that debts arising from recklessly inflicted injuries do not fall within the compass of § 523(a)(6). *Id.* at 61-62.

36.    In the Fifth Circuit, a "willful and malicious injury" requires finding an "objective substantial certainty of harm or a subjective motive to cause harm."  *Miller v. J.D. Abrams, Inc.*

*(In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998). "To prevail under § 523(a)(6), a creditor must prove by a preponderance of the evidence that the debt is not dischargeable." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005).

37.    As is relevant here, "[p]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability, although the bankruptcy court retains exclusive jurisdiction to ultimately determine the dischargeability of the debt." *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1201 (5th Cir. 1996) (citing *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991)). In determining whether to give preclusive effect to a state court judgment, courts "apply the preclusion rules of the state that rendered the judgment. *Matter of Hoffman*, 955 F.3d 440, 444 (5th Cir. 2020). Accordingly, Texas rules apply here.

38.    Under Texas law, "collateral estoppel only precludes the relitigation of ***identical issues of fact or law which were actually litigated <u>and</u> essential to the prior judgment***." *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721-22 (Tex. 1990) (emphasis added). "Collateral estoppel, or *issue* preclusion, is more narrow than res judicata in that it only precludes the relitigation of identical issues of facts or law that were actually litigated and essential to the judgment in a prior suit." *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985). A party seeking to assert the bar of collateral estoppel in Texas must establish that "(1) the facts sought to be litigated in the second action were *fully and fairly litigated* in the first action; (2) those facts were *essential to the judgment* in the first action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994) (emphasis added).

### A. The Essentiality Prong

39.     Under the essentiality prong, "facts are essential when they are 'necessary to form the basis of a judgment' in the first action." *Matter of Hoffman*, 955 F.3d at 445 (quoting *Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W.2d 926, 928 (Tex. 1988)). The question a reviewing court must answer is whether *the same ultimate issue litigated* in the Heslin/Lewis Action is presented in the nondischargeability action. *Tarter*, 744 S.W.2d at 927-28. "Ultimate issues are those factual determinations submitted to a jury that are necessary to form the basis of a judgment." *Id.* at 928.

### 1. The Disjunctive Jury Instruction for Defamation in the Heslin/Lewis Action Allowed the Jury to Award Damages Based on Reckless Conduct

40.     As a general matter, courts routinely decline to apply collateral estoppel in § 523(a)(6) cases based on the essentiality prong when the jury was given a disjunctive jury instruction because "[d]isjunctive jury instructions in state-court judgments make it difficult for a bankruptcy court to give preclusive effect to that judgment in deciding whether the judgment debt is nondischargeable." *In re Dang*, 560 B.R. 287, 293 (S.D. Tex. 2016).

41.     Here, the jury was given a disjunctive jury instruction on both Heslin's defamation claim and Heslin and Lewis's IIED claims. Both instructions allowed the jury to award damages based on reckless conduct. However, the Bankruptcy Court concluded that all the damages flowing from the defamation verdict were based on specific intent, while the damages flowing from the IIED verdict could have been based on reckless conduct. It is hard to square these two conclusions.

42.     As to defamation, the jury was instructed that:

> You are further instructed that at the time Defendants Alex Jones and Free Speech Systems, LLC published the statements on June 26, 2017 and July 20, 2017, Defendants knew the statements were false as it related to Neil Heslin, or that Defendants published the statements with a high degree of awareness that they were probably false, to an extent that Defendants in fact had serious doubts as to the truth of the statements.

(Doc. 29-5 at 5, Charge of the Court, Cause of Action No. 1 – Defamation Committed Against Neil Heslin). As is evident from the Charge of Court, the jury was instructed that Debtor and FSS *either* had actual knowledge that their statements were false *or* made the statements with reckless disregard of whether their statements were true or not. *See Bently v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002) (explaining that reckless disregard requires evidence "'that the defendant in fact entertained serious doubts as to the truth of his publication' or evidence 'that the defendant actually had a high degree of awareness of the probable falsity'" (cleaned up) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989))).

43.     As described above, Texas law precludes only the relitigation of "identical" issues. Here, the jury could have based its damages verdict on reckless conduct. However, "reckless acts . . . do not suffice to establish that a resulting injury is 'willful and malicious.'" *Kawaauhau*, 523 U.S. at 64. Accordingly, the Bankruptcy Court should not have applied the doctrine of collateral estoppel to the jury charge on defamation because a finding of willfulness and maliciousness was not necessary to form the basis of the jury's verdict. S*ee Eagle Props.*, 807 S.W.2d at 722 ("If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." (quoting Restatement (Second) of Judgments § 27, cmt. (i) (1982)).

44.     This situation arose in *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir. 1986), where a state court jury found the defendant liable for defamation pursuant to a general verdict. Because the plaintiff was a public figure, the jury was required to find actual malice. *Id.* at 615. The bankruptcy court granted the plaintiff's motion for summary judgment, reasoning that "[l]ibel is an intentional tort based upon a willful and malicious injury . . . . It suffices that this court finds

that the verdict [in the state-court action], finding Defendant liable for defamation, encompassed within it a finding that Defendant-Debtor willfully and maliciously injured Plaintiffs." *Id.* at 614 (first alteration and ellipses in original). The Sixth Circuit reversed the granting of summary judgment in favor of the plaintiff, reasoning that "a libel verdict may be based on reckless conduct," but "**[m]ere reckless disregard for the truth or falsity of the statement . . . is not a willful and malicious injury** for purposes of § 523(a)(6)." (emphasis added). The *Wheeler* court further reasoned that "[b]ecause the jury's verdict was general, it is impossible on the current state of the record to divine whether the jury verdict rested on a finding that [defendant] acted knowingly or merely recklessly." *Id.* at 615. The court concluded by stating that "neither the pleadings nor the general verdict reflects that the issue of willfulness and maliciousness was actually litigated and necessary to the verdict. Thus, based on the record at hand, collateral estoppel would not operate to bar relitigation of this issue." *Id.*

45.    While the Fifth Circuit has not opined on this particular issue, other courts have followed the guidance of the *Wheeler* Court:

> Although the Plaintiff pled intentional defamation in the state court proceeding, the default judgment does not necessarily imply a finding of "willful and malicious" conduct on the part of the Debtor due to the fact that the Plaintiff's Complaint alleged that the statements were made either "with knowledge . . .or reckless disregard for the truth." Clearly, reckless acts are insufficient to satisfy § 523(a)(6). *Wheeler, supra.* Further, there was no actual litigation regarding the Debtor's knowledge of the falsity of any statements made by her concerning the Plaintiff. Based on the state court records, this Court is satisfied that collateral estoppel principles should not prevent this Court from considering whether the Debtor's conduct was "willful and malicious" as defined by § 523(a)(6) of the Bankruptcy Code.

*Thompson v. Durrance (In re Durrance)*, 84 B.R. 238, 239-40 (Bankr. M.D. Fla. 1988); *see also*

*Mahadevan v. Bikkina (In re Mahadevan)*, 617 F. Supp. 3d 654, 664 (S.D. Tex. 2022) (holding

willful and malicious conduct was not necessarily decided by state-court judgment for defamation

14

when the "jury was not asked to decide whether [the defendant] *knew* that the statements were false, but spread them anyway, knowing they would harm [the plaintiff]"); *Irvin v. Faller (In re Faller)*, 547 B.R. 766, 771 (Bankr. W.D. Ky. 2016) (holding collateral estoppel did not apply where state court verdict found the defendant liable for defamation per se because the defendant's conduct was potentially reckless, which does not satisfy § 523(a)(6)); *Langan v. Evers (In re Evers)*, 212 B.R. 945, 949 (Bankr. E.D. Wis. 1997) ("Reckless disregard may be sufficient to establish libel but it is not sufficient to establish maliciousness under § 523(a)(6)."); *O'Gara v. Hunter (In re Hunter)*, 610 B.R. 479, 509 (Bankr. M.D.N.C. 2019) ("Plaintiffs plausibly pleaded actual malice under California law, but actual malice is a broader scienter requirement than that found in willful and malicious under § 523(a)(6)."); *Merritt v. Rizzo (In re Rizzo)*, 337 B.R. 180, 189 (Bankr. N.D. Ill. 2006) (stating "defamatory statement is not 'malicious' unless the debtor knew the statement was false when he made it"); *Jefferson v. Holland (In re Holland)*, 428 B.R. 465, 474 (Bankr. N.D. Ill. 2010) (same).

46.     The Bankruptcy Court did not discuss any of these cases and instead relied on *Purser v. Scarbrough (In re Scarbrough)*, 516 B.R. 897, 912-13 (Bankr. W.D. Tex. 2014). In *Scarborough*, the court applied the doctrine of collateral estoppel and concluded that a state-court defamation judgment was nondishargeable under § 523(a)(6). *Id.* The Bankruptcy Court here relied heavily on the fact that the defamation jury instruction in *Scarbrough* stated that the debtor made statements he "knew were false or which he made with a high degree of awareness that were probably false, to an extent that he in fact had serious doubts as to the truth of the statement(s)." Doc. 76 (quoting *Scarbrough*, 516 B.R. at 912). The Bankruptcy Court noted that the *Scarbrough* "instruction mirrors the defamation instruction in this case." *Id.* The Bankruptcy Court further

noted that the Fifth Circuit later affirmed that holding. *See Scarbrough v. Purser (In re Scarbrough)*, 836 F.3d 447, 456 (5th Cir. 2016).

47.     But *Scarbrough* and its subsequent affirmance by the Fifth Circuit does not support the Bankruptcy Court's reasoning. In *Scarbrough*, the defendant—who was an attorney—was sued in state court for defamation because he had disseminated false allegations that the plaintiffs' family members had abused and murdered their elderly father. *Id*. at 909. The reason for the false accusations was because, at the time he made the defamatory statements, the defendant was representing a woman who had received monetary gifts from the father and who had been sued by the family members for fraud. *Id*. at 904. The defendant had a full trial on the merits in state court and was found liable for defamation and fraud. *Id*. at 909. The defendant filed for bankruptcy, the plaintiff brought an adversary claim for non-dischargeability, and after a trial on the merits in front of the bankruptcy court, the court held that the debt was nondischargeable. *Id*. at 912. The court found that the defendant made his allegations as a strategic maneuver to delay burial of the father in an effort to obtain an autopsy to show that the father had not been suffering from dementia. The court further found that the attorney knew his statements were false. *Id*. The *Scarbrough* court concluded—with the luxury of a full record from the merits trial below and its record from the trial it conducted itself—that the defendant's "subjective motive in posting the videos was to damage [the plaintiff's] reputation and candidacy for the school board elections, and to needlessly harass her in connection with the Bell County lawsuit." *Id*. at 914.

48.     The most important thing to note from *Scarbrough* is that defendant had a full trial on the merits in the state-court and in the bankruptcy court where he was allowed to testify as to his level of intent, and two factfinders determined that the defendant knew he was lying about the plaintiff in that case. That same procedural posture and record is not present here. Rather, Debtor

was not allowed to testify to his culpability in the Texas Action and has not yet been afforded the opportunity to do so in front of the Bankruptcy Court.

49.     To be sure, the *Scarbrough* bankruptcy court did note that the jury was instructed that the defendant made statements "he knew were false or which he made with a high degree of awareness that were probably false, to an extent that he in fact had serious doubts as to the truth of the statement(s)," and then subsequently reasoned that this instruction thus showed that the jury "made a finding on the issue of the Debtor's subjective belief in the veracity of his own statements." *Id.* at 912. But this should be read in the context of the rest of the *Scarbrough* record, which, as described above, indicates that two factfinders determined that the defendant knew he was lying about the plaintiff in that case. And to the extent that *Scarbrough* can be read as giving preclusive effect to a defamation judgment that could've been based on reckless conduct, this Court should simply reject its holding and the Bankruptcy Court's reliance on it, as such a holding is counter to this Court's pronouncement in *Mahadevan*, 617 F. Supp. 3d at 664, and the numerous other cases cited above that were also cited to the Bankruptcy Court. Moreover, there is nothing binding on this issue from the Fifth Circuit's opinion in *Scarbrough*, as the appellant did not raise any argument about the use of a disjunctive jury instruction, so the Fifth Circuit had no occasion to opine on it.

50.     Accordingly, because numerous other courts from various circuits (including this Court) have held a jury award for defamation that could have been based on reckless conduct due to a disjunctive jury instruction does not necessarily decide the issue of "willful and malicious injury" under § 523(a)(6), and because the Bankruptcy Court did not provide any analysis for why this case is different, (or why the disjunctive jury instruction for defamation should be treated

differently that the disjunctive jury instruction for IIED) there are substantial grounds for a difference opinion as to the Bankruptcy Court's finding on defamation.

### 2. The Bankruptcy Court Improperly Relied on Allegations in Plaintiffs' State-Court Petitions

51.     As to the IIED in the Heslin/Lewis Action and both the defamation and IIED claims in the Pozner/De La Rosa Action, the Bankruptcy Court relied solely on the allegations from the Plaintiffs' state-court petitions to conclude that the deemed admissions were essential and constitute specific findings that Debtor objectively and subjectively intended the consequences of his acts, and that the acts injured Heslin and Lewis. (Doc. 46 at 15, 17). This language about "specific findings" by the Bankruptcy Court is seemingly an acknowledgment of this Court's reasoning in *Mahadevan*: "A judgment for negligence, intentional infliction of emotional distress, and defamation, '***without additional specific findings*** [as to intent], do[ ] not establish that the defendant acted willfully and malicious under section 523(a)(6).'" *Mahadevan*, 617 F. Supp. 3d at 664-65 (emphasis added and alterations in original) (quoting *In re Kauanui*, No. 14-00077, 2015 WL 359088, at *3 (Bankr. D. Haw. Jan. 23, 2015)).

52.     The Bankruptcy Court does not provide any authority for the proposition that a bankruptcy court can rely solely on allegations in a state-court petition that have been deemed admitted due to a discovery-sanction default to find willful and malicious injury under § 523(a)(6). Indeed, cases from the Fifth Circuit appear to point the opposite direction.

53.     *In re Pancake*, 106 F.3d 1242 (5th Cir 1997) provides some guidance. *In re Pancake* involved a death-penalty discovery default, just like this case. The defendant in *Pancake* failed to comply with discovery orders, and the state court struck his answer. *Id*. at 1243. The *Pancake* court noted that there was no evidence that the state court ever conducted a hearing where the plaintiff was put to its evidentiary burden of proving that defendant committed fraud. Thus,

the court explained that the case resembled a no-answer default judgment. *Id*. at 1244. And while

a state-court judgment can be based on a no-answer default because the defendant is deemed to

have admitted the factual allegations in the plaintiff's pleading, the *Pancake* court explained that

the inquiry for collateral estoppel purposes is different. In that context, the court explained, the

central focus is whether the issue had been fully and fairly litigated. The *Pancake* court concluded

by stating that if the plaintiff could produce record evidence that the state court conducted a hearing

where the defendant was put to its evidentiary burden, then collateral estoppel may be appropriate.

*Id*. at 1245. Thus, *Pancake* stands for the proposition that simply regurgitating the allegations from

a state-court petition, even in a case involving a discovery sanction default, will not support the

application of the doctrine of collateral estoppel.

54.     The Bankruptcy Court did not discuss *Pancake*, but Plaintiffs attempted to

distinguish it in their Reply Brief (Doc. 38) by arguing that there was an evidentiary hearing in the

Heslin/Lewis Action, whereas there was not one in *Pancake*. That is true. But the key point of

*Pancake*, as it relates to the use of state-court allegations in the application of collateral estoppel

is that the *Pancake* court clearly implied that allegations from a petition are not enough for

collateral estoppel purposes. Instead, a party has to present to the court record evidence that was

introduced in a state-court evidentiary hearing. Indeed, the Appellant's Brief in *Pancake* noted that

the Plaintiff attached his state-court petition to his motion for summary judgment. Appellant's

Brief at 6, *Matter of Pancake*, 106 F.3d 1242 (5th Cir. 1997) (No. 96-10798), 1996 WL 33455395,

at 6. Thus, the *Pancake* court had the plaintiff's state-court petition in front of it but did not accept

the plaintiff's pleadings as true for purposes of collateral estoppel. Nine years later, the Fifth

Circuit in *In re Harrison*, 180 F. App'x 485, 488 (5th Cir. 2006), noted that "*Pancake* stands for

the proposition that a reviewing court is required to fully investigate a record and to determine if

19

a default judgment should have preclusive effect." And it celebrated the bankruptcy court for taking a "hard look at the facts in this case show[ing] that the issues were fully and fairly litigated." *Id.*

55.     Moreover, it should also be noted that many of the allegations cited by the Bankruptcy Court include reference to reckless conduct, as Plaintiffs pleaded their causes of action in a way to satisfy the least strict culpability standard for defamation and IIED, which is recklessness. Finally, it appears that a lot of the allegations cited by the Bankruptcy Court are legal conclusions rather than well-pleaded allegations. Under Texas law, legal conclusions in a pleading do not have to be taken as true. *City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, 826 (Tex. App.—Austin 2014, no pet.); *see also C & H Transp. Co. v. Wright*, 396 S.W.2d 443, 446 (Tex. App.—Tyler 1965, writ ref'd n.r.e.), (holding that a "purely legal conclusion, without facts in support thereof, … is not therefore sufficient to support the judgment by default").

56.     Finally, the Bankruptcy Court's decision to rely on the allegations from the state-court petitions will make a damages trial a logistical nightmare. Currently, the Bankruptcy Court wants the parties to have a trial "about the damages stemming from the admitted allegations constituting a willful and malicious injury" for both the $44 million jury verdict on IIED in the Heslin/Lewis Action and the unliquidated damages figure in the Pozner/De La Rosa Action. (Doc. 46 at 16, 18). It is unclear how the parties here and the Bankruptcy Court could determine what part of the damages award was attributable to willful and malicious injury in the Heslin/Lewis Action. Nor is it clear how the Bankruptcy Court will decide (or, for that matter, whether it even has the power to decide) the amount of damages Pozner and De La Rosa should be awarded when a jury has not yet made any such determination.

57.     What makes more sense is to have a trial on Debtor's level of culpability. If the evidence shows specific intent sufficient to meet the requirements of § 523(a)(6), then the Judgments will be nondischargeable. Short of that, they won't be. But parsing out which dollar amount from the jury (or from the Pozner/De La Rosa Default Judgment) goes to which varying level of culpability seems logistically impossible. *Mahadevan* is instructive on this point. In *Mahadevan*, this Court held that willful and malicious conduct was not necessarily decided by a state-court judgment for defamation when the "jury was not asked to decide whether [the defendant] knew that the statements were false, but spread them anyway, knowing they would harm [the plaintiff]." 617 F. Supp. 3d at 664. The Mahadevan court held the same thing in regard to IIED. Id. at 663-64. The *Mahdevan* court then instructed the bankruptcy court to conduct a trial on the defendant's level of culpability. If the plaintiff was able to prove at trial that the requisite level of intent under § 523(a)(6) was met, then, the *Mahadevan* court concluded, the entire amount from the state-court judgment would be nondischargable. The Bankruptcy Court should have done the same thing here. The allegations from Plaintiffs' state-court petitions cannot support a finding of willful and malicious injury under Texas or Fifth Circuit law, and thus, the Bankruptcy Court must have a trial on Debtor's level of culpability, in accordance with *Mahadevan*, to determine whether the judgments are nondischargeable.

**B.  The Court Should Review the Remaining Elements of Collateral Estoppel Because such a Determination is Inextricably Intertwined with Issues Warranting Interlocutory Review**

58.     Debtor made three arguments in front of the Bankruptcy Court related to the fully and fairly litigated prong of collateral estoppel. **First**, Plaintiffs did not properly raise the issue of "willful and malicious injury" in their petitions, as none of their causes of action required a finding of "willful and malicious injury." **Second**, Plaintiffs' assertion of the discovery-sanction exception

21

to the general rule that default judgments are not given preclusive effect is inapplicable here because it only applies to "egregious" discovery abuses, and in both cases, Debtor was punished for the actions of his co-defendants. **Third**, the discovery-sanction exception does not apply when the defendant was not allowed to testify to his level of culpability, which Debtor was not allowed to do.

59.     Additionally, Debtor made multiple arguments based on what known as the fairness factors. Under Texas law, a court has broad discretion to decide if fairness outweighs the convenience of collateral estoppel, and redetermining issues is warranted if there are doubts about the quality, extent, or fairness of procedures followed in previous litigation. *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex. 1986) (quoting Restatement (Second) of Judgments § 28); *see also Montana v. United States*, 440 U.S. 147, 164, n.11 (1979).

60.     Finally, Debtor analyzed at length in his *Response to Plaintiff's Motion for Summary Judgment* (Doc. 61), the consideration of constitutional issues is a stand-alone *federal* collateral estoppel question—not exclusively a *state* appellate question—under 28 U.S.C. § 1738. *See Kremer v. Chem. Const. Corp*., 456 U.S. 461, 482 (1982) ("A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and . . . federal courts are not required to accord full faith and credit to such a judgment.").

61.     For these arguments Debtor cannot present to the Court the litany of cases that it presented for the proposition that disjunctive jury instructions on defamation and IIED in a state-court proceeding cannot preclude relitigation of "willful and malicious injury" under § 523(a)(6) and that a court cannot rely solely on the allegations from a state-court petition to apply the doctrine of collateral estoppel. However, Debtor does believe the law is on his side, and to the extent the Court does not believe these issues satisfy the substantial-ground-for-a-difference-of-opinion

element required to an interlocutory appeal, the Court should nonetheless review the Bankruptcy Court's Texas Order as it relates to these arguments. As a general matter, where a court has "jurisdiction over an interlocutory appeal of one ruling, [it has] the discretion to exercise pendent appellate jurisdiction over other district court rulings that are 'inextricably intertwined' or 'necessary to ensure meaningful review' of the first." *Bolmer v. Oliveira*, 594 F.3d 134, 141 (2d Cir. 2010) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51, (1995); *see also Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012); *Suboh v. District Attorney's Office of Suffolk Dist.*, 298 F.3d 81 (1st Cir. 2002); *Antrican v. Odom*, 290 F.3d 178 (4th Cir. 2002); *Moore v. City of Wynnewood*, 57 F.3d 924 (10th Cir. 1995).

62.     Here, all of these issues are inextricably intertwined with each other since they are all elements that must be satisfied in order to apply the doctrine of collateral estoppel under Texas law. *See supra* at 11. It would disserve judicial efficiency to only review certain issues decided by the Bankruptcy Court but leave others for an appeal after a final judgment.

## III.     An Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation

63.     An immediate appeal of the Order will materially advance this case. This element will be satisfied if permitting an interlocutory appeal "will speed up the litigation." (*Tesco Corp. v. Weatherford Intern., Inc.*, 722 F. Supp. 2d at 767; *Pemex Exploration y Produccion v. BASF Corp.*, 2011 WL 11569219, at *12; *Adhikari v. Daoud & Partners*, Nos. H-10-1997, H-11-2019, 2012 WL 718933, at *1 (S.D. Tex. Mar. 5, 2012). When determining whether an interlocutory appeal will materially advance the ultimate termination of the litigation, a court should examine "whether an immediate appeal would (1) eliminate the need for a trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Coates v. Brazoria Cnty. Tex.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013).

64.     Here, resolving the issues presented in this appeal would materially advance the termination of the case because it would ensure that the parties would only need to have one trial. On the other hand, if the Court decides not to grant leave to appeal the Order, then the parties will have to have a trial concerning the amount of damages attributable to willful and malicious injury. If Debtor prevails at that trial, then wins his appeal from the denial of summary judgment on Defamation, the parties would have to have a second trial to determine which of those damages satisfy the § 523(a)(6) standard. Immediate appeal would prevent the possible need for two separate trials.

65.     Moreover, if Debtor is correct that the Bankruptcy Court should not have relied solely on the allegations in the state-court petitions to find willful and malicious injury, then a subsequent trial after the appeal would look much different than one the Bankruptcy Court currently envisions. At present, it is unclear how the parties here and the Bankruptcy Court could determine what part of the damages award was attributable to willful and malicious injury in the Heslin/Lewis Action. Nor is it clear how the Bankruptcy Court will decide the amount of damages Pozner and De La Rosa Action should be awarded when a jury has not yet made any such determination.

66.     In addition, the Fifth Circuit has, on occasion, stated that interlocutory appeals are only appropriate under "exceptional" circumstances or in "big" cases. *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Const. Co.*, 702 F.2d 67, 69 (5th Cir. 1983). This case certainly qualifies as exceptional. Debtor is currently preparing his plan of reorganization and treatment of the claims stemming from the Heslin/Lewis Final Judgment and the Pozner/De La Rosa Default Judgment, and a determination of which parts of that judgment are and are not dischargeable is vital to the conclusion of the plan.

**CONCLUSION**

WHEREFORE, Debtor has satisfied the factors for granting a motion for leave to appeal the Texas Order and for the reasons set forth herein and in the interests of justice, the Debtor respectfully requests that this Court enter an order granting leave to appeal the Order and granting such other and further relief as is just and proper.

Dated: November 2, 2023.

Respectfully submitted,

**CROWE & DUNLEVY, P.C.**

*/s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon Avenue, Suite 425
Dallas, TX 75201
Telephone: 737- 218-6187
dallaseservice@crowedunlevy.com

-AND-

J. Christopher Davis
Oklahoma Bar #16629 (admitted *pro hac vice*)
Deric J. McClellan
Oklahoma Bar # 32827 (admitted *pro hac vice*)
222 N. Detroit Ave., Suite 600
Tulsa, Oklahoma 74120
Telephone: 737- 218-6187
dallaseservice@crowedunlevy.com

**COUNSEL FOR DEFENDANT-APPELLANT ALEXANDER E. JONES**

25

## **CERTIFICATE OF SERVICE**

I certify that on November 2, 2023, a true and correct copy of the foregoing pleading was

served via the Court's ECF system to the parties registered to receive electronic notice and/or via

electronic mail on the following:

Jennifer J. Hardy
600 Travis Street
Houston, Texas 77002
Telephone: 713-510-1700
Facsimile: 713-510-1799
Email: jhardy2@willkie.com

AND

Rachel C. Strickland
Stuart R. Lombardi
Ciara A. Sisco
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: 212-728-8000
Facsimile: 212-728-8111
Email: rstrickland@willkie.com
slombardi@willkie.com
csisco@willkie.com
*Bankruptcy Co-Counsel to the Texas*
*Plaintiffs*

Avi Moshenberg (Texas Bar No. 24083532)
**MCDOWELL HETHERINGTON LLP**
1001 Fannin Street
Suite 2700
Houston, Texas 77002
Telephone: 713-337-5580
Facsimile: 713-337-8850
Email: avi.moshenberg@mhllp.com

AND

Jarrod B. Martin
**CHAMBERLAIN, HRDLICKA, WHITE,**
**WILLIAMS & AUGHTRY, PC**
1200 Smith Street
Suite 1400
Houston, Texas 77002
Telephone: 713-356-1280
Facsimile: 713-658-2553
Email: jarrod.martin@chamberlainlaw.com
*Bankruptcy Co-Counsel to the Texas*
*Plaintiffs*


*/s/ Christina W. Stephenson*
Christina W. Stephenson